PORTER v. STATE LAND OFFICE BOARD.

1. TAXATION—ALLEGAN COUNTY—JURISDICTION OF STATE LAND OFFICE BOARD.

Allegan county land to which the State has acquired title through failure to redeem for nonpayment of taxes and which has been deeded by the auditor general to the State is under the control and jurisdiction of the State land office board (Act No. 155, § 3, Pub. Acts 1937, as amended).

2. SAME—SCAVENGER SALES—WITHHOLDING FOR MUNICIPALITY—FAILURE TO REDEEM—BIDS—RETURN TO TAX ROLL.

Lands prepared for sale by State land office board at so-called scavenger sale which were withheld from such sale upon petition of village within which they were located but not redeemed by the village and were offered at next subsequent scavenger sale without a bid being received thereat were lands subject to disposition under section of State land office board act pertaining to rehabilitation of lands and returning them to tax rolls (Act No. 155, § 8, Pub. Acts 1937, as amended).

3. MANDAMUS—PERFORMANCE OF A MINISTERIAL ACT—EXECUTION AND DELIVERY OF DEED BY PUBLIC OFFICER.

Mandamus was proper remedy for purchasers of land at auction sale by State land office board where material facts were not in dispute and only question involved is whether or not defendant board was legally obligated to convey lands to plaintiffs, the execution and delivery of a deed being only the performance of a ministerial act not requiring the exercise of judgment or discretion (Act No. 155, § 8, Pub. Acts 1937, as amended).

4. TAXATION—STATE LAND OFFICE BOARD—RULES AND REGULATIONS.

Under the State land office board act pertaining to disposal of lands acquired by the State through nonpayment of taxes, the board has the right to adopt reasonable rules and regulations (Act No. 155, § 11, Pub. Acts 1937).

5. SAME—RESERVATION OF RIGHT TO REJECT BID AT AUCTION—MU-
NICIPAL CORPORATIONS.

Rule of State land office board reserving "the right to reject
any or all bids at any time prior to delivery of deeds or con-
tracts covering such bids" was reasonable and protected the
right of municipalities under section of State land office board
act relating to disposal of lands which had not been purchased
at so-called scavenger sale to acquire lands for public purposes
at any time prior to delivery of a deed to the highest bidder
at auction sale held pursuant thereto (Act No. 155, §§ 8, 11,
Pub. Acts 1937, as amended).

6. SAME—PAYMENT—WITHHOLDING OF DEED—REASONABLE TIME.

The State land office board may not retain payment made for
lands purchased at auction sale held by the board of land not
theretofore conveyed pursuant to so-called scavenger sale, and
refuse to give a deed beyond a reasonable time; period from
August 3d to October 8th not being unreasonable (Act No.
155, §§ 8, 11, Pub. Acts 1937, as amended).

7. SAME—STATE LAND OFFICE BOARD—AUCTION SALE—REJECTION OF
BID—DUE PROCESS.

Rejection of bid by State land office board, made by plaintiffs
at auction sale of land not theretofore disposed of at so-called
scavenger sale and which was requested by village, within
which it was located, for use for public purpose, did not con-
stitute a deprivation of property without due process of law
where auction sale was held, plaintiff's bid presented, price
paid, and certificate of purchase issued subject to provisions
of the State land office board act and rules and regulations of
the board wherein it was provided bid might be rejected at any
time before deed or land contract was executed and delivered
(Act No. 155, §§ 8, 11, Pub. Acts 1937, as amended).

8. COSTS—MANDAMUS—STATE LAND OFFICE BOARD RULES—CON-
STRUCTION—PUBLIC QUESTION.

No costs are allowed in mandamus proceeding wherein reason-
ableness of a rule of the State land office board and its ap-
plication are considered, a public question being involved.

Petition by Glenn M. Porter and others for a writ
of mandamus to compel the State Land Office Board
to execute and deliver a quitclaim deed to certain
lands. Submitted February 1, 1944. (Calendar No.
42,588.) Writ denied April 3, 1944.

*Penny & Charter,* for plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Elbern Parsons,* Assistants Attorney General, for defendant.

STARR, J.   Plaintiffs petition this court for a writ of mandamus to compel defendant board to execute and deliver quitclaim deed conveying to them all right, title, and interest held by the State on August 3, 1943, in and to certain lands located in the village of Saugatuck, Allegan county.   In response to an order to show cause, defendant filed answer denying plaintiffs' right to the writ.

The material facts are not in dispute.   In pursuance of the general tax law (1 Comp. Laws 1929, § 3389 *et seq.* as amended [See Comp. Laws Supp. 1940 and 1943, § 3389 *et seq.,* Stat. Ann. and Stat. Ann. 1943 Cum. Supp. § 7.1 *et seq.*]) the lands described in plaintiffs' petition were offered for sale at the annual May, 1940, tax sale for delinquent taxes for the years 1930 to 1935, inclusive, and, there being no other bidders, said lands were sold to the State.   As there was no redemption from such sale, the State's title became absolute May 6, 1941, and on June 3, 1941, the auditor general conveyed the lands to the State.   The State land office board act, hereinafter referred to as the act, is Act No. 155, Pub. Acts 1937, as last amended by Act No. 196, Pub. Acts 1943 (Comp. Laws Supp. 1940 and 1943, § 3723-1 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 7.951 *et seq.*).   Thereafter, under section 3 of the act, defendant board was vested with control and jurisdiction of the lands in question.

In pursuance of section 7 of the act, defendant board prepared to sell the lands at the February,

1942, so-called scavenger sale, but upon the application of the village of Saugatuck, in pursuance of section 5 of the act, they were withheld from such sale. The village did not redeem, and in pursuance of sections 5 and 7, the board offered the lands for sale at the February, 1943, scavenger sale. As no bid was received at such sale, the lands became "subject to disposition" by defendant board under section 8 of the act, which provides in part:

"All other lands under the jurisdiction and control of the board shall be classified with the end in view of rehabilitating such lands as rapidly and speedily as possible and returning said lands to the tax rolls. * * * The State land office board shall make or cause to be made an appraisal of such lands. * * *

"The board is authorized to sell any such lands, except those over which it has relinquished jurisdiction, to the best advantage, but for not less than the appraised valuation to be fixed by the board from time to time, to reliable purchasers, either at cash or on time payment plans, such time payments not to run for longer than 10 years from the date of such sale and *the board shall, upon request by resolution of the governing body of the county, city, village, township or school district in which said lands are located, transfer such lands as such county, city, village, township or school district shall request, upon proof satisfactory to said board that such lands are needed for public uses but not for resale, to such county, city, village, township or school district and give a quitclaim deed therefor* covering such parcel or parcels of land, executed on behalf of the State of Michigan by the board."

In pursuance of the above-quoted provisions of section 8, the lands were appraised, and defendant board fixed a valuation of $250 thereon. Thereafter it advertised and gave notice that the lands would

be offered for sale to the highest bidder at a designated place in Allegan county on August 3, 1943. Such sale, referred to in plaintiffs' petition as a subsale, was held, and plaintiff Harold J. Mulder, as agent for all plaintiffs, bid the sum of $255, which was in excess of the appraised valuation. The lands were struck off to plaintiffs, who signed a form furnished by the board, entitled ''memorandum of sale,'' which provided in part:

''The above lands located in the above county, State of Michigan, identified by the above sale number of the official sale list for said county of the State land office board having been offered for sale at public auction pursuant and subject to the provision of Act No. 155, Pub. Acts 1937, as amended, and the rules and regulations of the State land office board, the undersigned has on the day above set forth made the highest bid therefor in the amount set opposite the sale number above.

''The undersigned hereby agrees to pay the above stated highest bid price in accordance with the following terms:     *     *     *

''Total amount in cash on date of sale.     *     *     *

''*The rights of the undersigned herein are subject to the provisions of Act No. 155, Pub. Acts 1937, as amended, and the rules and regulations of the State land office board.*''

Plaintiffs paid their bid of $255 in cash and defendant board, by its agent, delivered the following ''certificate of purchase'' dated August 3, 1943:

''It is hereby certified that the lands identified in the above memorandum of sale have been bid in by Harold J. Mulder, the bidder executing said memorandum of sale pursuant and *subject to the provisions of Act No. 155, Pub. Acts 1937, as amended, and the rules and regulations of the State land office board;* that said bidder has deposited in cash with this board     *     *     *

"The full purchase price thereof as set forth in said memorandum of sale.   *   *   *

"*Said highest bidder shall be entitled to receive a quitclaim deed*   *   *   *   covering the lands above identified, executed in behalf of the State of Michigan by the State land office board."

On October 6, 1943, plaintiffs made written demand that defendant board execute and deliver a quitclaim deed of the lands in question. On October 8th, in response to such demand, defendant wrote plaintiffs' attorneys as follows:

"In connection with your demand I wish to advise that the State land office board has rejected the offer of Porter and Mulder for the purchase of this property and authorized a refund of their deposit. The action of the board was determined by the fact that the village of Saugatuck deeded (needed) this property for public use and the transfer of such lands for such use has also been approved by the board.

"I wish to point out that under the rules and regulations of the board, the board reserves the right to reject any offers to purchase at any time prior to the execution and delivery of deeds or contracts.

"Due to the above I wish to advise that this office cannot honor your request that a deed be executed and delivered to your clients."

It appears that in pursuance of section 8 of the act the village council of Saugatuck, on October 8, 1943, had adopted a resolution requesting defendant board to convey the lands in question to the village for public purposes, and in its answer defendant alleges that it rejected plaintiffs' bid in order to make conveyance to the village.

Section 11 of the act authorized defendant board "to promulgate such rules and regulations as may be necessary to carry out the purposes and pro-

visions" of the act. In its answer defendant alleges that the sale on August 3, 1943, was conducted in pursuance of previously adopted rules and regulations, which provided in part:

*"The board reserves the right to reject any or all bids at any time prior to delivery of deeds or contracts covering said bids.     \* \* \**

"The sale will be conducted as a public auction. No bids will be received in advance or by mail. Each bidder must be present at the sale or have an agent bid for him. *Each parcel will be sold to the high bidder, subject to the provisions of the above act and these rules and regulations."*

In its answer defendant contends that mandamus is not plaintiffs' proper remedy and that they have a complete and adequate remedy in chancery. As the material facts are not in dispute, the only question involved is whether or not defendant board was legally obligated to convey the lands to plaintiffs. If the board was so obligated, the execution and delivery of a deed to plaintiffs would be only the performance of a ministerial act not requiring the exercise of judgment or discretion. As the only relief plaintiffs seek is a deed of the lands, we conclude that mandamus was their proper remedy. *National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240; *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673; *Tennant* v. *Crocker,* 85 Mich. 328.

Plaintiffs contend that their bid of $255, the confirmation of sale, the payment of the bid price, and the certificate of purchase created a contract obligating defendant board to execute and deliver a quitclaim deed of the lands in question. Defendant board contends, in substance, that the sale was subject to the provisions of the act and to its rules and regulations; that under section 8 the village of

Saugatuck was entitled to a deed of the lands for public purposes; and that the board had the right to reject plaintiffs' bid in order to make conveyance to the village.

As no bid was received at the scavenger sale held in February, 1943, the lands, under section 7 of the act, became "subject to disposition in accordance with the provisions of section 8." The sale on August 3d was accordingly held in pursuance of section 8. The distinction should be noted between the method provided in section 7 of the act and that provided in section 8 for the village to acquire title to the lands in question. Under section 7 the village could have acquired title as a purchaser but would have been obliged to pay "the expenses of the sale plus the proportionate part of the taxes and assessments which were due to the taxing unit or units not bidding and cancelled at the time of vesting of title in the State of Michigan." Under section 8 the village could acquire title without payment of expenses, taxes or other compensation, merely by requesting a transfer and making satisfactory showing that the lands were needed for public purposes.

The memorandum of sale signed by plaintiffs and the certificate of sale signed by defendant board both provided in substance that the sale was subject to the provisions of the act and to the rules and regulations of the board. The board had the right under section 11 of the act to adopt reasonable rules and regulations. *Emmons* v. *State Land Office Board,* 305 Mich. 406. It adopted a rule whereby it reserved "the right to reject any or all bids at any time prior to delivery of deeds or contracts" to purchasers. The subsale at which plaintiffs presented their bid was held August 3, 1943, and the board had not delivered deed to plaintiffs when, on October 8th, the village of Saugatuck requested a

transfer of the lands for public purposes. If the board's rule was reasonable and valid, it had the right to reject plaintiffs' bid on October 8th. It is clear that the rule protected the right of municipalities under section 8 to acquire lands for public purposes "at any time prior to delivery" of a deed to the highest bidder at a sale held in pursuance of said section. By reference, the rule in question became a part of the confirmation of sale and of the certificate of sale. The board could not have retained plaintiffs' payment and refused to give a deed beyond a reasonable length of time, but the period from the sale on August 3d to the request of the village on October 8th was not an unreasonable delay. Under the circumstances shown we cannot say that such rule was unreasonable.

Plaintiffs contend that the rule deprived them of vested property rights as purchasers of the lands, without due process of law. The sale was held, plaintiffs' bid was presented, the price was paid, and the certificate of purchase was issued, subject to the provisions of the act and the rules and regulations of the board, that is, subject to the right of the village of Saugatuck, under section 8, to acquire the lands for public purposes, and the right of the board, under its rules and regulations, to reject plaintiffs' bid at any time prior to delivery of deed. Therefore, as plaintiffs acquired no absolute right to the lands, the board's rejection of their bid did not deprive them of property rights without due process of law. The cases of *Wilson* v. *City of Pontiac*, 294 Mich. 79, and *Emmons* v. *State Land Office Board, supra*, cited by plaintiffs, involved sales under section 7 of the act and, therefore, are not applicable to the sale in the present case under section 8.

In pursuance of section 8; by resolution of its council, the village had requested a transfer of the

lands for public purposes. The proof that the lands were needed for public purposes and were not to be used for resale apparently was "satisfactory to said board." Not having delivered a deed to plaintiffs as purchasers, the board had the right to reject their bid. Under the facts and circumstances shown, it is clear that the village was entitled to a deed of the lands.

We conclude that plaintiffs are not entitled to a deed of the lands in question. Their petition for writ of mandamus is denied. Defendant board should refund their payment or deposit of $255. A public question being involved, no costs are allowed.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.