### YOUNG *v.* THENDARA, INC.

1. TAXATION—ABSOLUTE TITLE OF STATE—FORMER OWNERS.
   Previous owners of title to land, who failed to bid in property at tax sale or make redemption therefrom before the State's title became absolute, ceased to have any more interest in the title to the lands than any stranger to that title (CL 1948, § 211.351 *et seq.*).

2. SAME—EXTINGUISHMENT OF EASEMENTS.
   Dedication of two streets to the public and all other streets, walks, parks and paths to the use of owners of lots in subdivision is not considered, where such easements had been extinguished when State acquired absolute title to the subdivider's interest for nonpayment of taxes (CL 1948, § 211.351 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 7, 14, 15] 51 Am Jur, Taxation, §§ 1074, 1078, 1079.

[1, 2, 4, 7, 14, 15] Quantum of estate acquired by purchaser at tax sale of property which is subject to successive estates or different interests. 75 ALR 416.

[2, 4, 7, 14, 15] 17 Am Jur, Easements, § 129; 39 Am Jur, Parks, Squares, and Playgrounds, §§ 33, 34.

[2, 4, 7, 14, 15] Easement or servitude or restrictive covenant as affected by sale for taxes. 168 ALR 529.

3. PARTIES—CLASS SUIT—OWNERS OF LOTS IN A SUBDIVISION.
   Owners of lots in a subdivision, who have obtained title thereto from diverse sources, some of which were of doubtful character at time acquired, may not be considered as a class for the purpose of decreeing their individual rights.

4. EASEMENTS—PARK IN SUBDIVISION—PRESCRIPTION—CONSENT.
   Asserted easement by prescriptive use of a park in a subdivision which had not existed for period of 15 years before title thereto became absolute in the State as a result of nonpayment of taxes was extinguished, especially where such user as existed was by consent of the then owners of the park.

5. ADVERSE POSSESSION—STATE.
   Title against the State cannot be acquired by adverse possession.

6. EASEMENTS—PARKS IN A SUBDIVISION.
   Rights of lot owners to use of parks in a subdivision were properly characterized as easements.

7. TAXATION—SCAVENGER SALE—TITLE—EASEMENTS.
   Purchasers of parks in a subdivision, who purchased them at so-called scavenger sale acquired title from the State free from easements of owners of lots in the subdivision (CL 1948, § 211.359).

8. EASEMENTS—INCUMBRANCES.
   An easement is an incumbrance on land, a right which one proprietor has to some profit, benefit, or lawful use, out of, or over, the estate of another proprietor:

---

[3] 39 Am Jur, Parties, § 44 *et seq.;* 44 Am Jur, Quieting Title and Determination of Adverse Claims, § 77.

[3] Joinder of claims to separate parcels in suit to quiet or to remove cloud on title, or to determine adverse claims to land. 118 ALR 1400.

[3] Identity or community of interests essential to class or representative suit. 132 ALR 749.

[5] 1 Am Jur, Adverse Possession, §§ 18, 104–106.

[6–13] 17 Am Jur, Easements, §§ 2–6.

[12] 17 Am Jur, Easements, §§ 26, 46, 56.

[13] 55 Am Jur, Vendor and Purchaser, § 225.

9. SAME—PRIVILEGE.

An easement is a privilege without profit which one has for the benefit of his own land in the land of another.

10. SAME—PRIVILEGE.

An easement proper is a privilege which the owner of one tenement has a right to enjoy over the tenement of another.

11. SAME—DEFINITION—CREATION—TRANSFER—SURRENDER.

An easement is an interest in land and may not be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing (CL 1948, § 566.106).

12. SAME—RIGHT OF WAY.

The existence of a right of way is an easement and an incumbrance upon premises.

13. VENDOR AND PURCHASER—TITLE—INCUMBRANCES.

An incumbrance is anything which constitutes a burden upon the title to the diminution of the value of the land but consistent with the passage of the fee by the conveyance.

14. TAXATION—NONPAYMENT—ABSOLUTE TITLE IN STATE—RESALE— FREEDOM FROM INCUMBRANCES.

Land becomes free of all taxes and other liens when title becomes absolute in the State, on sale for delinquent taxes and upon resale by the State under the State land office board act, a new chain of title originates, evidenced by a quitclaim deed free of any incumbrances (CL 1948, § 211.351 et seq.).

15. EASEMENTS—PARKS IN SUBDIVISION—CLUBHOUSE—EXTINGUISHMENT.

Easements of use of parks and clubhouse property by lot owners in subdivision which were extinguished when title became absolute in the State for nonpayment of taxes and were not conveyed to plaintiffs by purchasers at so-called scavenger sale were not an incumbrance upon such properties, where new owners of such properties had not been previously obligated to plaintiff lot owners in such respect (CL 1948, § 211.351 et seq.).

Appeal from Oakland; Sweet (Lucien F.), J., presiding. Submitted April 13, 1950. (Docket No. 21, Calendar No. 44,690.) Decided June 5, 1950.

Bill by Roger Young and others against Thendara, Inc., and others to establish easements in certain lands. Cross bill by defendants against plaintiffs for injunction restraining interference with defendants' land and to quiet title in defendants. Decree for plaintiffs. Defendants appeal. Reversed and decree entered for defendants.

*Harcourt S. Patterson,* for plaintiffs.

*Harry J. Merritt* and *N. C. Zack,* for defendants.

BOYLES, C. J.    Thirty-three individual plaintiffs filed the bill of complaint in this case, claiming to constitute a class representing all owners of lots in Thendara Park Country Club, a subdivision in Independence township, Oakland county. Their purpose in filing the bill was to establish certain easements claimed by them in the use of the parks, club grounds, et cetera, in said subdivision. The property referred to in the bill includes, *inter alia,* a golf course, clubhouse, boathouse, beach, several parks and a road across one of them. During the hearing, the trial court dismissed the case as to 23 of the plaintiffs, and from such dismissal no question is raised on this appeal. The decree as entered further provides that as to the remaining 10 plaintiffs (5 individuals and their wives), the defendants were permanently restrained from in any way interfering with said plaintiffs' free use of said road, the club grounds, golf course, boathouse, docks, aggregating 8 parks in all; and after naming the 10 plaintiffs adds "in common with other lot owners in Thendara Park Country Club, a subdivision." The apparent purpose of such addition seems to have been to include all lot owners, together with the 23 individuals as to whom the bill was dismissed, as a class, represented

by the 10 individual plaintiffs who prevailed as the remaining plaintiffs in the case.

The defendants filed a cross bill seeking a finding of fact and law as to each separate parcel of land purchased by the defendants from the State at scavenger sale, a decree that said purchase created a new title in the defendants, and that the plaintiffs had no right or interest in said property. From the decree entered as above stated, the defendants appeal.

In 1925, one Wayland D. Stearns and his wife recorded a plat of the Thendara Park Country Club subdivision. There were approximately 1,220 lots, 8 so-called parks, including a golf course (outlot A), club grounds park block 6, clubhouse, boathouse, beach, et cetera. The elaborate scheme of a country club subdivision failed and in 1935 a receiver was appointed over the interests of the subdividers. The plattors conveyed their interests to the receiver (with exceptions unimportant here), and on March 3, 1939, the receiver, by order of court, conveyed said interests in the property to a grantee from whom said title became vested in one Kathryn Adams prior to 1940. In the meantime, the taxes for the years 1928 to 1935 had accumulated and become delinquent, as a result of which the park properties involved herein were sold for delinquent taxes in May, 1938, and bid in by the State. The title of the State became absolute November 3, 1939. On that date previous owners and the holders of liens and incumbrances "ceased to have any more interest in the title to the lands * * * than any stranger to that title." *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich 85.

On March 28, 1940, the defendant Thendara, Inc., obtained a quitclaim deed from Kathryn Adams of all her right, title and interest in the property in the subdivision. However, this conveyed no rights to

Thendara, Inc., as to any "park" property which the State had sold for delinquent taxes, the title to said property having become absolute in the State on November 3d of the preceding year. Thereafter the said property was put up for sale by the State land office board at so-called scavenger sale, and in February and March, 1941, Thendara, Inc., purchased club grounds block 6, and amphitheatre park block 9, from the State at said scavenger sale. In July, 1941, defendant N. C. Zack purchased from the State at scavenger sale the remaining parts of the park property in question. In the interim between those dates, section 9 of the State land office board act* had been changed by the legislature, to which change reference will be made later.

Plaintiffs introduced in evidence a properly certified copy of the original plat, but otherwise there was no proof of the *dedication* of streets, parks, et cetera, shown on the plat. Appellants here claim that said dedication cannot be considered, relying on *Township of Pontiac* v. *Featherstone,* 319 Mich 382. However, in view of our conclusion in this case, that question becomes unimportant. In the original plat the plattors dedicated 2 roads, naming them (not involved here), "to the use of the public," and all other streets, walks, *parks* and paths "to the *use* of the owners of lots in said subdivision." The gist of plaintiffs' claim here is that the plaintiffs, as a class, representing all owners of lots in the subdivision, have an easement in the parks by reason of the "use," namely, the right to use the clubhouse and all of the other parks. Other "streets, walks,  *  *  *  and paths" are not involved.

Plaintiff Denne acquired title to a lot in the subdivision by deed from Stearns, the plattor, in 1928, and later by deed from Thendara, Inc., in July, 1941.

---

* PA 1937, No 155 (CL 1948, § 211.351 *et seq.* [Stat Ann 1947 Cum Supp § 7.951 *et seq.*]).

Said deeds did not contain any reference to any conveyance of an easement in the parks owned by the plattors, or by the defendants, nor does this record show what disposition has been made of Denne's case, or his claim of an easement, unless it is "in common with other lot owners." He is not mentioned by name in the decree. Plaintiffs Frechette and wife obtained their title by assignment of a contract from the original owner of their property who had obtained a contract from the State after the scavenger sale by "redeeming" it. According to appellants' brief, plaintiffs Tingler and wife, Jewell and wife, and Arnold and wife, obtained deeds from the defendants. But in none of their conveyances did the defendants grant to them any easement or use in the park property here involved. Plaintiff Young and wife obtained a quitclaim deed from Thendara, Inc., on March 18, 1941, and later, in October, 1942, a warranty deed from the same grantor. Their deeds did not include an express grant of any easement in the use of the parks in question. The above-mentioned Frechettes, Tinglers, Jewells, Arnolds, and Youngs are the only plaintiffs mentioned by name in the decree enjoining the defendants from interfering with their "free use" of the parks here involved. Any other owners, if granted any relief by the decree, would have to be considered as "class owners" under the addition to the above names in the decree "in common with other lot owners" in the subdivision. The diversity of sources from which titles to lots have been acquired by all other possible lot owners, the doubt as to the title of their grantors at the time their respective rights accrued, shows the impracticability of considering all owners of lots in the subdivision as a class for the purpose of decreeing their individual rights, in the case at bar. See *Barker* v. *Township of Vernon,* 63 Mich 516, 519.

Plaintiffs claim an easement across club grounds park block 6 by prescription—the right to the use of a road across said park for access to some of plaintiffs' lots. No claim is made of a way of necessity, or by dedication in the plat. But the proofs show that said claimed roadway had not been used by any of the lot owners for 15 years prior to the time when the title of the State to said park block 6 had become absolute on November 3, 1939. At that time any right by adverse possession was extinguished. *Grand Rapids Trust Co.* v. *Doctor,* 222 Mich 248. Title against the State cannot be acquired by adverse possession. *Staub* v. *Tripp,* 248 Mich 45. As an additional reason why plaintiffs fail to establish said easement by prescription, the proofs show that said use was by consent of the then owners of said park block 6, hence the proofs fail to show the necessary adverse user. See *Stewart* v. *Hunt,* 303 Mich 161.

Counsel for appellees in their brief properly refer to their claim of rights of plaintiffs in the parks as easements. There is no claim that the defendant Thendara, Inc., or the defendants Zack have ever conveyed to the plaintiffs any easement to use the parks for any purpose. The proof is to the contrary. The crucial question which confronts plaintiffs is whether their so-called easements, the right to use the parks owned by the defendants, were extinguished when title to the parks became absolute in the State. We conclude they were. When the defendants acquired title from the State at scavenger sale, it was free from the easements claimed by the plaintiffs.

For the purposes of this case, none of the parties make any point in the difference between section 9 of the State land office board act at the time Thendara, Inc., purchased at the scavenger sale before June 19, 1941, and the time when the defendants

Zack purchased the remainder of the property after that date. Section 9 of the act in effect in February, 1941, provided:

"Any quitclaim deed or deeds executed by the board shall convey title in fee to land vested in the board under the provisions of this act, free from any incumbrances, except as herein otherwise provided." PA 1937, No 155 (Stat Ann 1940 Cum Supp § 7.959).

As amended by PA 1941, No 363, effective June 19, 1941, it provides:

"Any quitclaim deed or deeds executed by the board or department shall convey title in fee to land under the provisions of this act, free from any incumbrances, including all taxes and special assessments which were cancelled by the decree pursuant to which the State obtained title, except as herein otherwise provided."[*]

The exceptions referred to are not claimed to be pertinent here. None of the parties here claim any distinction as to their rights differing as between the plaintiffs and Thendara, Inc., acquired under the act prior to June 19, 1941, and their rights acquired as to the Zacks in July, 1941, after the amendment to the act. Nor is it claimed that the change in wording of anything "otherwise provided" in the act has changed the rights of the parties here, and, hence, that need not be considered. For the purposes of this case we consider that the rights or obligations of both defendants are identical, and not affected by any "other" provisions in the act before or after the amendment.

Both before and after the amendment the act required the State land office board to convey title in fee "free from any incumbrances." An easement is an incumbrance on land, a right which one proprie-

---

[*] CL 1948, § 256.359 (Stat Ann 1949 Cum Supp § 7.959).—Reporter.

tor has to some profit, benefit, or lawful use, out of, or over, the estate of another proprietor. *Morrill v. Mackman,* 24 Mich 279 (9 Am Rep 124); *McClintic-Marshall Co. v. Ford Motor Co.,* 254 Mich 305 (77 ALR 807). An easement is a privilege without profit which one has for the benefit of his own land in the land of another. *Hasselbring v. Koepke,* 263 Mich 466 (93 ALR 1170). An easement proper is a privilege which the owner of one tenement has a right to enjoy over the tenement of another. *Burling v. Leiter,* 272 Mich 448 (100 ALR 1312).

"An easement is an interest in land and may not be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing (CL 1929, § 13411)."* *Myers v. Spencer* (syllabus), 318 Mich 155.

The existence of a right of way is an easement and an incumbrance upon the premises, and is a breach of the covenant in a warranty deed conveying same free from all incumbrances. *Lavey v. Graessle,* 245 Mich 681 (64 ALR 1477), cited with approval in *Porter v. Ridge* (1945), 310 Mich 425, 430.

"An incumbrance is anything which constitutes a burden upon the title to the diminution of the value of the land but consistent with the passage of the fee by the conveyance." *Porter v. Ridge* (syllabus), *supra.*

"Anything is an incumbrance which constitutes a burden upon the title; a right of way, *Clark v. Swift,* 3 Metc (Mass) 390, 392; a condition which may work a forfeiture of the estate, *Jenks v. Ward,* 4 Metc (Mass) 404, 412; a right to take off timber, *Cathcart v. Bowman,* 5 Pa St 317; a right of dower, whether assigned or unassigned, *Runnells v. Webber,* 59 Me 488. In short, 'every right to, or interest in the land, to the diminution of *the value* of the land, but con-

---

* CL 1948, § 566.106 (Stat Ann § 26.906).

sistent with the passage of the fee by the conveyance.' *Prescott* v. *Trueman,* 4 Mass 627, 630 (3 Am Dec 246)." *Post* v. *Campau,* 42 Mich 90, 94.

This Court has held that when title becomes absolute in the State, on sale for delinquent taxes, the land becomes "free of all taxes and other liens and incumbrances of whatever kind or nature, and future and deficiency as well as past assessments and taxes were cancelled. * * * Upon resale by the State land office board, a new chain of title originated, evidenced by a quitclaim deed, 'free of any incumbrances.' " *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich 314, 325 (affirmed, 316 US 153 [62 S Ct 975, 86 L ed 1341]).

"The law further provides in the State land office board act (PA 1937, No 155, § 9, as amended by PA 1941, No 363 [CLS 1942, § 3723-9, Stat Ann 1942 Cum Supp § 7.959]):

" 'Any quitclaim deed or deeds executed by the board or department shall convey title in fee to land under the provisions of this act, free from any incumbrances, including all taxes and special assessments which were cancelled by the decree pursuant to which the State obtained title.'

"The latter act was discussed in *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich 314, and those members of the Court who concurred in the opinion of Mr. Justice SHARPE held that 'anything is an incumbrance which constitutes a burden upon the title,' and that 'it would naturally follow that the possibility of reassessment would constitute an incumbrance and thus be cancelled.' * * * Our *Birmingham* decision is authority for the proposition that the possibility of reassessment would constitute an incumbrance, and is, therefore, cancelled." *Keefe* v. *Oakland County Drain Commissioner,* 306 Mich 503, 510.

"The deed given by defendants to plaintiffs described the premises and covenanted 'that they are

free from all incumbrances whatever and that they will and their heirs, executors, and administrators, shall warrant and defend the same against all lawful claims whatsoever.' The existence of the right of way was an easement and an incumbrance upon the premises in question. * * * A right to an easement of any kind is an incumbrance. 20 CJ, p 1252." *Lavey* v. *Graessle, supra.*

The Court also has held that the right to a mechanic's lien is extinguished when the title of the State becomes absolute:

"The State of Michigan had bid in said lot 293 at delinquent tax sale in 1940, and, there being no redemption, the auditor general conveyed it to the State by deed dated June 3, 1941, and recorded November 3, 1941. The State thereby became the owner of the lot, free and clear of all liens and incumbrances, and a new chain of title was started. *Porter* v. *State Land Office Board,* 308 Mich 324; *Darby* v. *Freeman,* 304 Mich 459. Subsequently, on February 4, 1942, plaintiff filed a claim of lien on the 'land and building' in the amount of $1,728.95. * * * The State sold this property at scavenger sale to defendant Ferry on April 17, 1942. The deed from the State to Ferry was given in pursuance of PA 1937, No 155, § 9, as last amended by PA 1941, No 363 (CLS 1943, § 3723–9, Stat Ann 1944 Cum Supp § 7.959), which provides in part:

" 'Any quitclaim deed or deeds executed by the [State land office] board or department shall convey title in fee to land under the provisions of this act, *free from any incumbrances.*'

"Under our recent decision in *Boissoin* v. *Gillie,* 311 Mich 358, the building in question became a part of the realty. Therefore, under the above-quoted statute defendant Ferry acquired title to the land and building free from plaintiff's claim of lien. *Pavlovic* v. *Kastner,* 302 Mich 120; *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich 314."

*Lowrie & Webb Lumber Co.* v. *Ferguson,* 312 Mich 331, 333, 337.

We conclude that all easements which plaintiff lot owners may have had in the parks acquired by the defendants at the scavenger sale were extinguished when the title of the State became absolute. The defendants have not granted any such easements since they became such owners, and the plaintiffs have none.

Plaintiffs rely on the claim that the defendants cannot take advantage of the title acquired by the State and conveyed to them on scavenger sale, and rely on *Jacobsen* v. *Nieboer,* 299 Mich 116. The distinction between the situation in the *Jacobsen Case* and the case at bar is apparent. The defendants in the instant case owed no duty or obligation to allow the lot owners the use of the parks acquired by the defendants from the State. The defendants have never covenanted or agreed with lot owners that they might have an easement in or the use of the defendants' property. Defendants did not owe any obligation to plaintiffs in that regard. The distinction between the *Jacobsen Case* and the case at bar has been plainly indicated in *Meltzer* v. *State Land Office Board,* 301 Mich 541, at page 546, as follows:

"In that case (*Jacobsen* v. *Nieboer, supra*), we held that a mortgagor could not cut off the rights of his mortgagee by subsequently purchasing the property at scavenger sale, after having defaulted in his covenant to pay taxes on the property. The decision is based on the principle that a mortgagor cannot take advantage of his own default after covenanting to pay taxes, and defeat the mortgage lien by subsequently obtaining title under the scavenger sale. The distinction between the *Jacobsen Case* and the case at bar is apparent. In the *Jacobsen Case,* the mortgagor who subsequently tried to cut off the mortgage lien by purchase from the State

owed a duty to the mortgagee to pay the taxes. In the case now before us, the Newtons owed no duty to Fox and wife to pay the taxes."

A decree may be entered in this Court setting aside the decree appealed from and granting the defendants (cross-plaintiffs) the relief sought in their cross bill, quieting title in the property herein involved free from plaintiffs' claims of easement or use of said property. In view of defendants' specific offer and request in their brief as to the decree which may be entered here, it will also

"approve defendants' offer of a strip of land 200 feet long on the shore of the lake for beach and swimming purposes for use of all lot owners;
"approve defendants' establishment of a road to replace the present unplatted road bisecting club grounds park block 6 for the use of all lot owners."

Costs to appellants.

Reid, North, Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.