GRAND RAPIDS TOWNSHIP HIGHWAY
COMMISSIONER v. WALKOTTEN.

1. HIGHWAYS AND STREETS—OFFICERS—ADMISSIONS.
   The rights of the public in a highway cannot be admitted away
   by the taxing officers.

2. SAME—ADVERSE USER—EXEMPTION FROM TAXATION.
   The question of adverse, exclusive and uninterrupted public
   user for highway purposes of a strip of land across a lot
   in a subdivision would be somewhat affected by the fact
   that such lot had at all times been listed as private property
   whereas an adjacent lot was withheld from sale at scavenger
   sale and exempted from the tax rolls because used for road
   purposes.

3. TRESPASS—FINDING OF COURT—HIGHWAY BY USER—PREPONDER-
   ANCE OF THE EVIDENCE.
   Trial judge's finding in action of trespass that plaintiff town-
   ship highway commissioner had not made a sufficient show-
   ing that the township had acquired a road by user across
   defendants' land held, not against the preponderance of the
   evidence.

4. TAXATION—SCAVENGER SALE—QUITCLAIM DEED—ENCUMBRANCES.
   A quitclaim deed under the State land office board act conveys
   title in fee, free from any encumbrances except as to build-
   ing restrictions, and, since the easement of a roadway would
   be an encumbrance, title to such lot so conveyed would be free
   from such encumbrance (CL 1948, § 211.351 et seq.).

---

REFERENCES FOR POINTS IN HEADNOTES
[2] Generally as to establishment of the highway by prescription,
    see 25 Am Jur, Highways § 11 et seq.
[3] 3 Am Jur, Appeal and Error § 896 et seq.
[4] 51 Am Jur, Taxation §§ 1078, 1079.
[4] Quantum of estate acquired by purchaser at tax sale of prop-
    erty which is subject to successive estates or different in-
    terests. 75 ALR 416.

5. Highways and Streets—Title by User—Scavenger Sale.
   Title by user was not established under highway statute, where 10 years had not elapsed since sale of lot to defendants' predecessor at scavenger sale (CL 1948, § 211.351 *et seq.;* § 221.20).

Appeal from Kent; Brown (William B.), J.  Submitted October 15, 1953.  (Docket No. 80, Calendar No. 45,619.)  Decided January 5, 1953.

Trespass by Marshall Douthett, as highway commissioner for Grand Rapids Township, against Henry J. Walkotten and wife.  Judgment for defendants on plaintiff's appeal to circuit court.  Plaintiff appeals.  Affirmed.

*Irving H. Smith,* for plaintiff.

*Adrian W. Verspoor,* for defendants.

Butzel, J.  Marshall Douthett, as highway commissioner for Grand Rapids township, Kent county, Michigan, brings this action in trespass against Henry J. Walkotten and Wilma J. Walkotten, his wife, defendants, in accordance with PA 1925, No 368 (CL 1948, § 247.171 *et seq.* [Stat Ann § 9.251 *et seq.*]).

Defendants are the record owners of lot 195 of Beverly Hills plat in Grand Rapids township.  Their predecessor in title acquired the property in 1940 by deed from the State of Michigan at a scavenger sale held in accordance with the scavenger act (CL 1948, § 211.351 *et seq.* [Stat Ann § 7.951 *et seq.*]).  Plaintiff, seeking to establish that the township owns a highway by user across lot 195, began action in a justice court in Kent county in February of 1950, where defendants prevailed.  Plaintiff then appealed to the circuit court where he again was unsuccessful.  He appeals to this Court.

Beverly Hills subdivision was platted in 1923 and consists of 204 fairly large lots. It is traversed by streets which arc in an irregular manner but in general meander either in an easterly-westerly or northerly-southerly direction. Morningside drive, of this subdivision, 60 feet in width, runs directly north and south. Its westerly boundary is approximately 140 feet west of the easterly boundary line of the subdivision. There is a row of 26 lots (one of which is lot 195), most of them being 80 feet in width and fronting on Morningside drive. They run easterly to the east line of Beverly Hills subdivision.

One of the highways meandering through the. subdivision in an east-west direction is Oak Hollow drive which comes to an end at Morningside drive, almost opposite lot 194, which is owned by Grand Rapids township. Lot 195, involved in this litigation, is immediately south of lot 194.

Cascadia Plat No 2, platted in 1927, is a different subdivision lying immediately east of and abutting Beverly Hills subdivision. Lot 195 and others on the east side of Morningside drive abut the west boundary line of Cascadia No 2, which is also the east boundary of Beverly Hills. Those lots in Cascadia No 2 that on the west abut lot 195 and some others in Beverly Hills front on East Belt Line. A 60-foot street, also called Oak Hollow drive, appears on the plat of Cascadia No 2. It runs southeast and northwest, intersecting East Belt Line some 80 feet south of where the south boundary line of lot 195 of Beverly Hills would lie if it were extended through Cascadia No 2. As platted in Cascadia No 2, Oak Hollow drive runs up to the boundary line between the two subdivisions and ends at the east boundary line of lot 195, Beverly Hills. The recorded plat of Beverly Hills shows no continuation of Oak Hollow drive through the east side of Morningside drive. For clarity we have included herein a

rough drawing showing a small part of the 2 subdivisions and have added certain alleged facts brought out by the testimony.

It appears that at some time or times some gravel and cinders were spread upon the narrow stretch of property, 13 to 15 feet wide, used as a road through lot 195. No orders or directions by any proper township authorities or officers for the spreading of such gravel or cinders were shown or even claimed. It seems apparent that the gravel or cinders may have been spread on the short distance of the claimed narrow road by workmen or others who did not know the lot lines. This part of the subdivision was unimproved. It is conceded that there was but a small amount of traffic over this roadway in comparison with that over other streets in the subdivision. Certainly it was a convenience to. parties wishing to travel from the streets in Beverly Hills to those in Cascadia No 2, and vice versa, to make a short cut for but a limited space over this vacant lot. Lot 195 and the other lots in the vicinity are a very long distance from any main east-west thoroughfare, both to the north and south. It was not a way of necessity. Should one want to reach the streets east of Beverly Hills, in Cascadia No 2 or beyond, he would naturally be tempted to make a short cut through this narrow open space instead of driving the long distance to the cross roads, consisting of US–16 located about 1,000 feet south of lot 195, and east Fulton street, a greater distance, to the north. There seems to be no question, however, but that the strip was used to a limited extent during the years. There also appear to be slight indentations along the borders of the 60-foot width claimed by plaintiff, but there are no ditches nor is there sufficient credible testimony to even remotely show that more than the narrow strip was even used.

It is quite significant that Oak Hollow drive to the west of Morningside drive as well as Morningside drive itself were black-topped, though this was not done to any part of the strip between Morningside drive and East Belt Line avenue. Defendant Henry Walkotten testified that as his home was in Grand Rapids, his visits to his property in Grand Rapids township were infrequent, but that he did see it on the average of once a year. He saw nothing that indicated to him that any part of lot 195 was being maintained by the public authorities as a highway. In the wintertime he has gone to the lot and found it covered with snow. As recently as 3 weeks before the trial of this case he found the strip almost impassable because of the accumulation of water on it. Plaintiff introduced testimony to show that a snowplow and a grader were frequently driven over the strip, but as indicated, defendant found the snow undisturbed when he visited the lot. Plaintiff admits that in 1937, he ceased exercising control over the road. The assistant engineer of the Kent county road commission testified that the commission never authorized any work to be done on lot 195 and his guess was that someone did it as a sort of a neighborly or community act. It is also significant that when it came to the scavenger sale Grand Rapids township did not ask that the lot be withheld from sale, as it had a right to do. It stood by, made no bid, and continued to tax this lot the same as any other private property. Defendants paid their taxes promptly, with the exception of the last ones to become due. The supervisor of the township testified that lot 194 was exempted from the tax rolls because it was used for road purposes, but that lot 195 was not thus exempted. While the rights of the public in a highway cannot be admitted away by the taxing officers, the fact that the lot had at all times been listed as private property is of some significance in connection with

other facts as affecting the question of adverse, exclusive, and uninterrupted public user. *City of Detroit* v. *Myers,* 152 Mich 666. Defendant Walkotten testified that if the claimed strip was taken from lot 195, the remainder of the lot would be of no value for residence purposes. Defendants offered testimony to show that they did not object to the use of the strip in a limited way but that when they found that the strip was being used more extensively as a highway they served notice upon plaintiff and placed a snow fence across the property. This litigation followed. We shall not discuss the testimony more in detail. We have carefully read the record and we conclude that the finding of the trial judge is not against the preponderance of the evidence when he found that there was not a sufficient showing by plaintiff that the township had acquired the road by user.

The trial judge further held that the sale of the lot under the scavenger act to defendants' predecessor in title on June 28, 1940, established a new title from the State of Michigan, and extinguished any encumbrances theretofore existing; that the purchaser from the State acquired title free and clear of all encumbrances. Plaintiff, however, contends that a highway, such as is claimed here, is not an encumbrance. The so-called "scavenger sale" act, PA 1937, No 155 (CL 1948, § 211.351 *et seq.* [Stat Ann § 7.951 *et seq.*]), distinctly provides that a quitclaim deed by the State land office board conveys title in fee, free from any encumbrances except as therein otherwise provided. The sole exception refers only to building restrictions. While plaintiff strenuously insists that a roadway of this character is not an encumbrance, we believe the case of *Young* v. *Thendara, Inc.,* 328 Mich 42, is decisive. It quotes many other cases defining "encumbrance," in holding that roadway easements and rights of park usage in subdivi-

sion lots were extinguished by virtue of the statute. When the State, by the State land office board, deeded the lots to a purchaser, that purchaser was held to take title free and clear from roadway easements and park uses. Plaintiff attempts to distinguish this case but in the last analysis the principle remains true and is decisive on the question herein presented. Even had plaintiff any rights to the strip by user, the necessary 10 years had not elapsed since the sale under the scavenger act, so as to establish a title by user under the highway statute (CL 1948, § 221.20 [Stat Ann § 9.21]).

We agree with the circuit judge in his conclusions, and the judgment in favor of defendants is affirmed, with costs.

ADAMS, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred with BUTZEL, J.

DETHMERS, C. J., and REID, J., concurred in the result.