193 A.2d 793 (1963)
VALLEY BUILDERS, INC., a corporation of the State of Delaware, Plaintiff,
v.
Norris A. STEIN and E. Rita Stein, his wife, Defendants.
Court of Chancery of Delaware, New Castle.
July 11, 1963.
*794 Jacob Balick, Wilmington, for plaintiff.
Howard M. Berg, Wilmington, for defendants.
MARVEL, Vice Chancellor.
On December 31, 1960, plaintiff and defendants entered into a written contract under the terms of which it was agreed that plaintiff would build a house for defendants on a lot owned by the builder in a development known as North Hills in Brandywine Hundred. The agreement further provided that upon completion of the house title would be conveyed to defendants. Construction of the house began on March 10, 1961 and continued into the summer. On August 14, however, the defendant Mrs. Stein informed plaintiff's president, Harrison E. Chapman, that she and her husband were dissatisfied with the house as constructed to date and no longer wanted to take title.
Thereafter, by letter dated September 22, 1961, their attorney asked that plaintiff relieve Mr. and Mrs. Stein of their contractual obligation and that it return their deposit. The reasons given for such demand were that the house was not being constructed in a good, workmanlike fashion; that it did not conform to the contractual plans and specifications, and that it did not meet the requirements of the New Castle County Building Code. The letter further stated that objections raised by defendants during the course of construction of the house to plaintiff's workmanship had been ignored and that it was no longer possible for the obvious defects in the house to be made good. Finally, it was stated that if plaintiff did not accede to their attorney's demands, Mr. and Mrs. Stein would bring an action for formal rescission of the contract and for the recovery of their deposit.
In response to such letter plaintiff brought this action for specific performance and for incidental damages, and this is the decision of the Court after final hearing.
The complaint incorporates the contract by reference and alleges that by September 21, 1961, construction of the house had reached a point at which plaintiff could no longer proceed without defendants' approval of certain materials and the like and that though requested to, defendants had allegedly refused to make the necessary choices. Plaintiff claims that at all times during its performance of the contract it has been and is now ready and able to perform its contractual obligations. It therefore prays, inter alia, that defendants be ordered to make selections and decisions as to materials and the like so that the building of the house may be completed. Plaintiff also asks that defendants be further directed to pay the stipulated purchase price upon completion of the house and tender of a deed by plaintiff. The complaint also seeks damages allegedly caused by defendants' inaction.
Defendants' answer admits execution of the contract in question but points out that plaintiff was notified in August that the house was unsatisfactory and that they caused their attorney to send the September 22 letter referred to above. They go on to contend by way of counterclaim and affirmative defense that in the course of negotiations preceding the making of the contract in question plaintiff's employees made certain fraudulent misrepresentations concerning the kind and quality of the materials plaintiff proposed to use and that although they were informed that the house would be erected in a good, workmanlike manner out of materials of excellent quality, such was not done. Defendants also aver that plaintiff failed in the various respects set out in the letter of September 22 to perform *795 its obligations under the contract and ask that they be reimbursed for the amount of their deposit and for expenses incurred in reliance on plaintiff's promises. Finally, they ask that a lien be declared to attach to the premises in controversy for the purpose of securing the payment of the sums allegedly due them.
Defendants contend after trial that plaintiff has an adequate remedy at law and should therefore seek its claimed damages in such a court. They do not, of course, question the power of a court of equity to grant specific performance to either a vendor or a purchaser in the ordinary case of a contract for the purchase and sale of land. Defendants rather take the position that what is involved here is not an ordinary contract for the purchase of land but one calling for the construction of a building which remains unfinished. They urge that it is well recognized that it is virtually impossible properly to control specific performance in such a situation because of the difficulties inherent in judicial supervision of a building contract. They submit accordingly that jurisdiction should be declined. I am satisfied, however, that such principle does not apply to the facts adduced in the case at bar because the building of the house in question was well on the way to completion[1] when defendants sought to wash their hands of their contractual obligations. And if, as plaintiff contends, it is ready, willing and able to take whatever steps are necessary to bring the house to a stage of full completion and is permitted to do so, a judicial determination as to whether or not plaintiff has entirely fulfilled its contractual obligations can presumably be made. Thus, plaintiff takes the position that it in effect stands in much the same position as the ordinary vendor of real estate. Assuming that plaintiff has not only in large part built the house but is capable of completing it substantially as called for in the contract, I am satisfied that this Court has jurisdiction to grant plaintiff the basic relief for which it prays.
Defendants contend, however, that they were justified in repudiating their contractual obligations in September 1961, because plaintiff at that time had committed major breaches of the contract in issue and was thereafter unable to deliver a house that could meet the terms of the parties' agreement.
First of all, having considered defendants' contentions relating to plaintiff's alleged fraudulent misrepresentations as to materials, I find such unsupported by the facts. I am also satisfied that an exercise of reasonable diligence on defendants' part would have led to the avoidance of many alleged grievances claimed by them, such as disappointment over the size of the lot which they proposed to buy and the color of roofing materials. Defendants go on to claim that in any event the evidence establishes the fact that plaintiff has committed the following breaches of the contract, namely that (a) the house was built in a shoddy, poor, and unworkmanlike manner; (b) the materials used therein were inferior to those normally used in a house of like type, cost, and size, and (c) the construction of the house does not comply with the provisions of the Building Code of New Castle County.
Apart from their differences as to jurisdiction the parties do not disagree on the basic principles of law here applicable. Thus, defendants insist that there is an implied condition contained in a contract such as the one in issue that the builder will do a workmanlike job, and plaintiff agrees. The latter contends, however, that it in fact performed the job according to the terms of the contract up to the point at which defendants insisted on a halt in construction. While defendants for their part concede that they would not have been entitled to *796 disavow the contract had there not been a substantial and material breach thereof on plaintiff's part, they claim that the evidence clearly establishes such was the case. Plaintiff, on the other hand (while not denying that as of mid-September 1961, there were certain defects in the house including violations of the New Castle County Building Code) contends that most of these defects had been or were in the course of being remedied and that in any event they were relatively minor and did not at that time entitle defendants to treat the contract as terminated.
Accordingly, the first question to be decided is whether defendants have established their claimed right to repudiate the contract at the time they did because plaintiff had by then demonstrated an inability or unwillingness to furnish substantial performance thereof. The second, assuming defendants were not justified in treating the contract as terminated at the time they did, is plaintiff now entitled to a decree of specific performance?
The facts of record disclose that before the contract of sale was executed, the parties had several discussions concerning the type of house to be built. Plaintiff's president then prepared plans based on a design in plaintiff's possession denominated "Modified Bedford", altered so as to comply with defendants' wishes. By agreement of the parties such plans together with accompanying specifications were incorporated into the contract of sale. However, the agreement provided that plaintiff might have the option of substituting materials substantially similar to those stipulated for in the contract in the course of construction of the house.
The record indicates that the actual course of construction of the house was attended by the difficulties usually encountered in such projects. Such difficulties were compounded by the fact that the parties from time to time purported to make oral modifications of the written contract, thereby causing a good deal of confusion on the job site. Furthermore, it is clear that plaintiff and its subcontractors committed a number of construction blunders during the building operations which were remedied only when called to plaintiff's attention. In fairness to plaintiff, however, it must be said that it was generally diligent in acceding to defendants' demands when requested so to do. It is also apparent that defendants were often dilatory in registering complaints. As might well be expected, relations between the parties became strained as the construction of the house proceeded.
The breaking point in dealings between the parties was reached on or about August 7, 1961 when Mr. Stein discovered on a visit to the house that one of its foundation walls had been pushed inward along a horizontal plane. The record supports a finding that this rupture or failure in the foundation wall was caused by the negligent operation of a bulldozer the blade of which either struck the wall or forced a mass of dirt up against it. Mr. Stein thereupon sought out Mr. Chapman, an officer of the plaintiff corporation, and asked him what he was going to do about the situation. He was assured that the wall would be rebuilt and that the necessary repairs would be made right away.
On August 14, Mrs. Stein visited the house and found that the wall had not as yet been repaired. She also noticed a small crack in the plaster on a post in the living room which supported the second floor. She concluded that the crack in the living room was causally related to the rupture of the foundation wall, and assumed that the supporting post itself was cracked. She therefore decided that the house was unsafe and with her husband's approval informed plaintiff that they no longer wanted to buy it. This decision was confirmed by their attorney's letter of September 22.
Shortly after August 14, plaintiff undertook to begin repairs on the wall and to proceed with completion of the house. The Building Inspector of New Castle County then made an inspection of the work being *797 done on the ruptured foundation wall and found it unsatisfactory. He accordingly issued a stop work order which by its terms was to remain in effect until satisfactory repairs were made. Ultimately, however, he approved the completed job of reconstruction of the wall in question. Plaintiff meanwhile was going ahead with repairs and new work on the house so that by September the performance of the contract had allegedly reached a stage at which no further work of any importance could be carried on by plaintiff until defendants had selected certain materials, particularly plumbing and lighting fixtures. As of the date of trial application to the County Building Inspector for final approval of the house had not been made.
At the trial, evidence, including expert testimony, was introduced concerning the allegedly shoddy manner in which the house was constructed. Proof of alleged violations of the County Building Code was also proffered. However, except for a claimed failure on plaintiff's part to build foundation walls of required thickness,[2] defendants apparently do not take the position that any single violation of the Code or particular instance of allegedly defective workmanship would entitle them to be relieved of their contractual obligations. For instance, defendants concede that welding to secure the proper supporting of the weight of the house on columns was done on the eve of trial. They argue rather as a first reason for the denial of plaintiff's prayer for a decree of specific performance that the cumulative effect of claimed Code violations and other instances of allegedly defective workmanship, particularly that which led to the opening of a fault in the foundation wall and its initially faulty repair, justify the conclusion that the job as a whole was done in an unworkmanlike manner.
The record as a whole does not, in my opinion, support defendants' contentions that the work performed by plaintiff was in a legal sense so "unworkmanlike" as to constitute a breach of contract. Defendants had contracted to buy a finished product. Therefore, unless it has been demonstrated that the seller is incapable of delivering a basically sound, finished house, built in substantial conformity with the terms of the contract, defendants were not entitled to repudiate when they did nor may they obtain a decree of rescission now.
First of all, it is obvious that a building contract of this sort necessarily requires a cooperative effort, and I am satisfied that a large number of the alleged defects about which defendants now complain would either have not been perpetrated or would have been remedied by plaintiff had defendants exercised closer surveillance over the job. Thus, the cutting down of certain trees on the lot could have no doubt been minimized had defendants presented their views in a more explicit and forceful way. Furthermore, the tendency of the cellar to flood was not irremediable, and the real or captious complaints about the alignment of windows, the design of the stairway, and like problems could have either been avoided or forestalled had defendants insisted on adherence to architectural plans.
In part, at least, a number of areas of disagreement over the details of the house are concerned with questions of esthetics, convenience, and taste. Viewed separately, however, none of these complaints even if established would, in my opinion, be of such significance as to entitle defendants to treat the contract as terminated. Judgment on such matters of taste and the like will await completion of the house in the event that its structure is found to be basically sound under the procedure hereinafter outlined.
Turning to more fundamental aspects of plaintiff's alleged failure to perform a workmanlike job in substantial compliance with the contract, at least one allegedly major unremedied violation of the New Castle County Building Code is claimed, as noted above, namely a claimed breach of the provision *798 thereof having to do with the required thickness of the foundation walls of the house. This claim is placed in sharp focus by reason of the failure of one such wall as described earlier in this opinion.
The Building Code of New Castle County was adopted by the Levy Court of New Castle County under the legislative grant contained in Title 16, Del.C., Sec. 8301. Such Code purports to set forth rules and regulations governing building practices in the County, and section 105.0 of the Code gives the power of interpreting and enforcing it to the Building Inspector. However, a right of appeal from such officials to an Appeals Committee appointed by the Levy Court is provided for as well as an appeal from such committee to the Levy Court.
I have outlined the above procedure because I am of the opinion that defendants should have resorted to it in the first instance for the purpose of having a preliminary determination made as to whether or not fundamental and irremedial violations of the Building Code presently exist in the house in question. I say this because the alleged defects on which defendants rely as a basis for repudiating the contract turn in large part on an interpretation of technical provisions of such Code. In other words, the provisions of the Code in issue must be read in the light of the relation of the number and spacing of supporting piers to foundation wall thickness as well as the relation of building materials used, soil consistency, height of house, and the use of fill to such requirement. And while plaintiff takes the position that the Building Inspector's failure to date to disapprove specific items complained of is an indication that the work was done in accordance with the Code, the fact is that the Inspector has not yet made his final inspection of the premises. Accordingly, as indicated above, I am of the opinion that defendants should first seek an administrative review of whatever objections they may have based on violations of the County Building Code in the manner provided therein. And since plaintiff concedes that it is not entitled to the relief sought by it unless and until the house receives such final approval, defendants may advance their views on non-compliance in such proceedings. Such inspection should, of course, include inter alia, approval or disapproval of the method of installation of lolly columns and other supports, as well as the condition of the basement floor and whether or not the foundation walls are adequate.
Defendants, however, urge that apart from their basic defense based on alleged building defects, plaintiff breached the contract on other grounds in that it was unable to deliver the house at the time called for in an oral agreement of the parties. The contract of sale provided for final settlement on or before December 21, 1961, time being of the essence. Defendants tacitly concede that plaintiff in the normal course of events could have reasonably been expected to complete the house by that date. They insist, however, that after execution of the written contract plaintiff orally agreed to deliver possession of the house at an earlier date, namely by September 5, 1961.
The facts on which defendants rely for such defense are as follows. While the new house was under construction, defendants were attempting to sell their old house to Albert F. Rosevich. Mr. Rosevich in turn was attempting to sell his house to a Mr. Parnell. Mr. Gerson, plaintiff's secretary and sales representative, was in charge of both of these pending transactions, and an effort was made to co-ordinate these proposed transfers of title so as to lessen the inconvenience to those involved. Defendants were no doubt informed that their new house would probably be finished early in September and on that basis agreed to sell their old house to Mr. Rosevich, the settlement date to be September 4, if by then the buyer had been able to sell his own house. In August, however, as noted earlier, the rupture of the foundation wall in the new house hereinbefore alluded to occurred, and due in large part to plaintiff's delay in starting *799 necessary repairs completion of the house was also delayed.
Defendants contend that they were induced by plaintiff to believe that the house would be completed by September 5. Therefore, they urge that the formal written contract of sale was modified to that extent, time still remaining of the essence. From this defendants argue that plaintiff having failed to complete the house on time was guilty of a clear breach of contract entitling them, independently of the other grounds advanced, to treat the contract in issue as terminated.
In my opinion, however, the written contract of sale was not in fact[3] amended or supplemented as contended by defendants. First, without regard to the requirement of the Statute of Frauds there is no showing of any consideration of value supporting an alleged formal contractual change of the final settlement date set forth in the contract. Secondly, looking at defendants' contentions from the point of view of estoppel, I am satisfied that defendants were clearly given to understand that plaintiff was simply attempting to arrange an accommodation satisfactory to all parties and at most was guessing at the possibility of an earlier completion date than that provided for in the contract. In other words, plaintiff's time estimate was not tantamount to a promise nor did it reasonably serve to induce defendants to change their position in reliance thereon. I conclude therefore that defendants were not entitled to repudiate the contract on the grounds that the house in issue had not been completed by September 5, 1961.
In view of the conclusions reached herein it follows that a conditional decree of specific performance will be granted unless the house as completed fails to receive final approval by the County. Approval, if granted, would, in my opinion, constitute a certification that the house in question is structurally sound. If such approval is given, and affirmed on appeal, defendants will be required either to make the necessary uncompleted selections of materials and other required decisions concerning completion of the house or permit such selections and decisions to be made by plaintiff so that work on the house may be carried to completion. Plaintiff, of course, must on its part demonstrate substantially full performance of the contract and tender a deed to defendants before it is entitled to receive the purchase price.
In the event that the basic work on the house passes inspection and the house proceeds to completion the Court will then make a determination as to whether or not plaintiff has in a legal sense substantially performed its contractual obligations. It follows that any consideration of the question of damages will be deferred for the time being, jurisdiction of the case being retained for such purpose.
On notice, a form of order may be submitted in accordance with the above opinion.
NOTES
[1] In fact, defendants contended in a motion filed after trial that plaintiff was still engaged in working on the house.
[2] Section 803.70 et seq., Foundation Walls, The Building Code of New Castle County, State of Delaware, 1951.
[3] The contract provided: "No modification of this agreement shall be binding unless such modification shall be in writing and signed by the parties hereto."