Kline v. Lawrence County Commissioners et al.

*Gilbert E. Long,* for petitioner.

*William McElwee, Jr.,* for County Commissioners.

*J. Elder Bryan* and *Leroy K. Donaldson,* for defendants.

BRAHAM, P. J., March 17, 1951.—This case is before the court upon a petition for declaratory judgment. Plaintiff is a purchaser of tax lands from the county commissioners at a sale divested of liens. He alleges a cloud on his title because of an outstanding estate in the minerals under the lands. The answer of Frances J. and Carl L. Schweikart sets up their claim of ownership to the coal underneath the lands. The answer of the county commissioners alleges that there was a reservation as to only part of the coal and that the tax sale divested the remainder. From the evidence we find the following

*Findings of Fact*

1. The common owner of all the interests in the land involved in this dispute was Jacob Barge, who obtained title to 12 acres and 74 perches of land in Shenango Township, Lawrence County, Pa., by deed dated February 29, 1864, recorded October 24, 1901, in deed book, vol. 102, page 405.

2. On April 24, 1882, Jacob Barge and Anna, his wife, by deed recorded in deed book, vol. 102, page 407, conveyed a part of said lands, namely, 7 acres and 74 perches, to George W. Barge, subject to this provision:

"Reserving, however, all minerals, stone, coal in or under the herein before described land, with the right to mine, take and carry away said coal and reserving

the use and occupancy of about one-fourth of an acre of land, south-west corner next to Lawrence Schweikart for the purpose of mining said coal, platform, etc."

3. On May 1, 1876, Jacob Barge and Anna, his wife, by deed recorded in deed book, vol. 131, page 87, conveyed a part of the lands described in the first finding of fact, namely, five acres, to Susan Gaston, subject to this provision:

"Said party of the first part retaining the right to mine, dig and take out coal from under the above described premises with the right of way from under the above described premises, with the right of way to and from the bank for drifts, the said coal privilege to also include the erection and maintaining of the necessary drifts, platforms, tramways, etc., by said person, by said party of the first part as well as whatever may be necessary to mine or take out said coal, free from any cost whatever to said party of the first part; the said party of the second party shall have the privilege to dig or mine or cause to be dug or mined whatever coal may be necessary for her own use only, without any consideration being rendered for the said privilege to said party of the first part."

4. By divers conveyances good in law title to the seven-acre tract referred to in the second finding of fact and the five-acre tract referred to in the third finding of fact became vested in Sarah E. Casedy. The lands were sold for unpaid taxes and bought by the county commissioners as the property of A. J. Casedy, her husband.

5. By divers conveyances good in law whatever rights in the coal, of an alienable character, were retained by Jacob Barge when he made the conveyances referred to in the second and third findings of fact, became vested in defendants, Frances J. Schweikart and Carl L. Schweikart.

6. After the severance of the minerals, to the extent to which they were severed by the conveyances referred to in the second and third findings of fact, there was never any separate assessment for tax purposes of the estate in the minerals and neither defendants Schweikart or their predecessors in title ever paid any taxes on the minerals.

7. The tax sale of the 12-acre tract of land was made by the county treasurer to the Commissioners of Lawrence County by tax deed dated May 1, 1940, being sale numbered 5203 of that day. The sale was confirmed by this court at September term, 1940, M. D., no. 47. Just how the title passed from Sarah E. Casedy to A. J. Casedy does not appear.

8. The county commissioners held the lands for more than two years, to wit, until March 10, 1950, when, after fixing an upset price of $1,238, they offered the property for sale at public sale but got no bidders. Then they sought and obtained an order of this court at June term, 1950, no. 23, dated March 13, 1950, for a sale of the lands free and divested of liens.

9. The order of court authorizing a sale free of liens provided for a sale "freed and cleared of all tax and municipal claims, liens, mortgages, charges and estates of whatever kind."

10. The advertisement of this sale authorized by order of this court dated May 17, 1950, provided for sale "free and divested of liens, mortgages and encumbrances". The order directing the sale, dated June 28, 1950, directed a sale "freed and cleared of all tax and municipal claims, liens, mortgages, charges and estates."

11. On August 2, 1950, the county commissioners sold the lands free of liens to Harold M. Kline for $1,675. This sale was confirmed absolutely by an order of court dated August 2, 1950, which declared

the property to be sold "free, clear and discharged of all tax and municipal liens, mortgages and estate of whatsoever kind."

## Discussion

At the outset of the discussion in this case the court wishes to point out that the record of the hearing in this case may be defective and incomplete. The findings of fact have been gleaned rather freely from the papers in the case. The attention of counsel is directed to this feature and exceptions to cover an incorrect or unwarranted findings on material omissions are requested.

Plaintiff is the purchaser from the county commissioners of land underlaid with coal at a sale free and divested of liens as authorized by the Act of May 29, 1931, P. L. 280, par. 17, as amended, 72 PS §5971(q). In this declaratory judgment proceeding plaintiff alleges an outstanding interest in the coal underlying the lands which he has bought. The County of Lawrence alleges that there is no outstanding interest; defendants, Frances J. and Carl L. Schweikart, allege that they own such an interest. A proper case for declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended by the Act of May 22, 1935, P. L. 228, 12 PS §831 et seq. has been made out: Grambo et al. v. South Side Bank and Trust Co. 141 Pa. Superior Ct. 176; Conemaugh Iron Works Co. v. Delano Coal Co., 298 Pa. 182.

The first question of moment in the very real controversy which exists is the actual nature of the interest in the property of 12 acres which remained in Jacob Barge after he made the conveyance of the seven acres referred to in the second finding of fact and the five acres referred to in the third finding of fact. This involves the historic distinction between reservations and exceptions. A reservation is said to be "always

of a thing not in esse, but newly created, or reserved out of the land or tenement demised"; whereas an exception is always of something "in esse at the date of the deed, part of the land itself, and therefore not the subject of a reservation": Whitaker v. Brown, 46 Pa., 197-98 Reservation of coal ordinarily connotes the severance of a corporeal hereditament and an exception as distinguished, for example, from a reservation of timber or bark: Strunk et al. v. Morris Run Coal Mining Co., 271 Pa. 148; O'Donnell v. Morris Run Coal Mining Co., 319 Pa. 293.

The county commissioners make a point of the failure to use words of inheritance in the deed for the five acre and the deed for the seven-acre tract. If an exception rather than a reservation has been made words of inheritance are not necessary, this because a man does not need words of inheritance to retain a fee which he already has: Mandle v. Gharing et al., 256 Pa. 121.

What, therefore, was the nature of the interest retained by Jacob Barge when he made the two conveyances? As to the seven acres it is clear he excepted all the coal. No words of inheritance were necessary; he already owned the fee. An exception was created and the coal remained in him and his heirs.

As to the conveyance of the five acres the case is not so clear. He did not reserve all the coal, only "the right to mine, dig and take out coal". At once we are confronted with a conflict in the cases, not to be completely reconciled in any view of the situation. On the one hand there are cases holding similar dispositions to convey only a license to take out minerals: Funk v. Haldeman, 53 Pa. 229; Grubb v. Grubb et al., 74 Pa. 25; Gloninger et al. v. The Franklin Coal Co. et al., 55 Pa. 9; The Johnstown Iron Coal Co. v. The Cambria Iron Co., 32 Pa. 241. On the other hand there are Caldwell v. Fulton, 31 Pa. 475; Strunk et al. v. Morris

Run Coal Mining Co., 271 Pa. 148; O'Donnell v. Morris Run Coal Mining Co., 319 Pa. 293; Mandle v. Gharing et al., 256 Pa. 121; Smith v. Glen Alden Coal Co. et al., 347 Pa. 290, and the like, which find a sale of the coal in place.

The problem is a difficult one. In the Morris Run Coal Company case all the coal was reserved; in Caldwell v. Fulton the grant was of the "full right, title and privilege of digging and carrying away coal to any extent"; in G. J. Lillibridge et al. v. Lackawanna Coal Coal Co., 143 Pa. 293, all the merchantable coal was leased with the exclusive right to mine and reserve it. In the case at bar the language (quoted in the third finding of fact) is not so definite. It is only of the right to mine coal, elsewhere referred to as a "coal privilege". The most illuminating feature is the grant of a privilege to the grantee of the surface to mine coal solely for her own use. If it was the intent of the parties to grant the coal to the grantee, it was not necessary to grant the privilege to mine. If on the other hand the coal was excepted and retained to the grantor it was necessary to give the grantee the privilege to mine. The intention must be sought from all the language: Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Saltsburg Colliery Company v. Trucks Coal Mining Company, 81 Pa. Superior Ct. 542.

Our conclusion is that the grant to the purchaser of the surface of a privilege to mine indicates that the coal was intended to be excepted from the conveyance. This unusual provision takes the place of the words "all" or "exclusive" as they appear in some of the cases.

Having concluded, as to both the seven acre and the five-acre tract, that deeds contained exceptions rather than reservations, that no words of inheritance were necessary, and that the coal remained in Jacob Barge and his grantees, we next proceed to determine whether

8

the Schweikarts and their successors in title have lost the coal by a failure to pay taxes on the coal. One principle is well settled; where there has been a severance of minerals from surface each may and should be assessed separately: Sanderson v. City of Scranton, 105 Pa. 469; D. L. & W. Ry. v. Sanderson, et al. 109 Pa. 583. The estates of the owner of the surface and of the several minerals are so distinct that one may buy the interest of the other at tax sale: Powell et al. v. Lantzy et al., 173 Pa. 543.

The problem in the case at bar is answered for us by the opinion in Norris v. D. L. & W. R. R. Co. 218 Pa. 88. In that case there was a severance of the coal, after which the surface continued to be assessed but the coal was not assessed. Nevertheless the coal was sold with the surface on a tax sale of the surface. Plaintiff brought ejectment against the coal company by virtue of this tax title. It was held that, since the coal had not been assessed, title to it did not pass at the tax sale. It was said:

"The collector totally disregarded his duty in not ascertaining the owner of the coal and demanding of him the payment of the taxes".

To the same effect is Northern Coal & Iron Co. v. Burr, 42 Pa. Superior Ct. 638.

If there is assessment in the name of one who has owned the property the present owner is put on notice: Humphrey v. Clark, 359 Pa. 250. Where minerals are assessed but in the wrong name and this with the connivance of the owner the assessment will pass title: Wilson v. A. Cook Sons Co., 298 Pa. 85. When the assessment completely fails to identify the thing sold the assessment is void: Hunter v. McKlveen, Prothonotary, et al., 361 Pa. 479. The presumptions are in favor of the sale: Fabel, Admr., v. Hazlett, 157 Pa. Superior Ct. 416.

The Act of May 9, 1923, P. L. 175, 72 PS §5662 relied upon by the county, is not controlling. It relates in terms only to the situation where there is a life estate in the surface but no interest in the coal. The same thing may be said for the Act of May 22, 1933, P. L. 853, par. 415, 72 PS §5020-415.

It is regrettable to be obliged to allow citizens the benefit of a failure to pay the taxes they should have paid. The burdens of government are now so heavy that all should share. Nevertheless we must follow the law and, applying the principles above stated, are forced to the conclusion that the tax sale passed no title to the minerals claimed by the Schweikarts.

Here our attention must be transferred from the Schweikarts and the interest they have in the minerals to plaintiff and the interest he took by the sale free and clear of liens and encumbrances. The act providing for the sale of seated lands for delinquent taxes was the Act of May 29, 1931, P. L. 280. This act contained no provision for a sale divested of liens. This first appeared in the amendment of May 21, 1943, P. L. 364, amending section 17 of the Act of 1931, 72 PS §5971(q).

The procedure for the sale of tax lands free and discharged of liens is purely statutory: Superior Mining Property Tax Sale, 359 Pa. 357. The act provides that when there has been a sale for an upset price and no bid equal to the upset price has been received, the court must order a sale free of liens. Close attention must be paid to the language. With the petition for sale free of liens, the commissioners are directed to file "searches, showing the state of the record and the ownership of the property, and of all municipal claims, mortgages and ground rents against the same which were not divested by the county treasurer's sale". A rule is directed to issue to show cause why a sale "freed and cleared of their respective mortgages, municipal

claims and ground rents" should not be decreed. If the court makes the rule absolute it is authorized to decree a sale "clear of all mortgages, municipal claims and ground rents" to the highest bidder.

There is no mention of divesting "estates" until the concluding portion of the Act of 1943 where it is provided that the purchaser at a sale divested of liens "shall take and forever thereafter have, an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind". There is a final statement:

"Where the sale is made without securing an order of court, as aforesaid, such deed shall pass such title as the county commissioners have a right to convey, but where the sale is made after securing an order, as aforesaid, such deed shall pass title free, clear and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind."

In the case at bar the claim of the Schweikarts to the land in question was an "estate". It was a separate estate severed from the surface about 70 years previously and thereafter separately enjoyed. When it passed the Act of 1943 did the legislature intend to authorize a proceeding to drag an altogether separate estate into the case and extinguish it?

The Act of 1943 authorizes the court to make a decree extinguishing only "municipal claims, mortgages and ground rents", not "estates". When, therefore, the legislature declares that the effect of the decree is to extinguish, inter alia, "estates", this means such estates as municipal claims, mortgages and ground rents.

The title to the Act of 1943 does not support the contention that it was the legislative intent to sell such independent estates in land as the Schweikarts' interest in the coal. The effective part of the title re-

lates only to "authorizing the sale of such property on court order, and the redemption thereof after such sale, free and clear of all mortgages, municipal claims and ground rents". Sale of "estates" is not authorized.

The notice of the proposed sale which was given by the commissioners provided for a sale divested of "liens, mortgages and encumbrances". They could not do more than they advertised.

Plaintiff claims to have acquired title to the Schweikart coal by virtue of the sale free of liens or lacking such effect, to have recourse to the county because he got less than he bargained for. Has he a right to look to the county? We apprehend not. All the Act of 1931 authorized the commissioners to sell was such title as the commissioners had. All the Act of 1943 added was the right to sell this interest free of liens and encumbrances, categories which, as above pointed out, do not include separate estates in the minerals. Plaintiff was put upon notice by the record of the severance of the coal in 1876 and in 1882. He could not get more than the commissioners had to sell.

Entertaining these views we make the following conclusions of law and decree nisi.

### Conclusions of Law

1. The retention by Jacob Barge of an interest in the coal when the seven-acre tract was sold was an exception and required no words of inheritance.

2. The retention by Jacob Barge of an interest in the coal when the five-acre tract was sold was an exception and required no words of inheritance.

3. Since there was no assessment of the coal in either tract at any time a tax sale in the name of the owner of the surface passed no title in the coal to the purchaser.

4. The Act of May 21, 1943, P. L. 364, amending section 17 of the Act of May 29, 1931, P. L. 280, as

further amended by the Act of May 24, 1945, P. L. 945, par. 2, 72 PS (5971(q)), does not authorize the extinguishing of an estate in coal severed many years previously but only estates in the nature of municipal claims or taxes, mortgages or ground rents.

5. The commissioners were authorized by the Acts of 1931 and 1943 to sell only such title as they had free of mortgages, municipal claims and ground rents.

6. Plaintiff has no recourse to the county for failure to get the estate in the minerals claimed by the Schweikarts.

### Decree Nisi

Now, March 17, 1951, after full consideration of this case it is ordered, adjudged and decreed that plaintiff acquired a good title to the lands which he purchased at a sale divested of liens approved by this court on August 12, 1950, at June term, 1950, no. 23, free and divested of all mortgages, municipal claims, ground rents and estates in the nature thereof, but that he did not acquire title to the minerals theretofore severed and now owned by Frances J. and Carl L. Schweikart. It is found also that plaintiff has no recourse to the County of Lawrence. The costs of this proceeding are placed upon the County of Lawrence. This decree shall become absolute unless exceptions hereto are filed within 10 days.

### Opinion sur Exceptions

Braham, P. J., August 28, 1952.—Exceptions to the decree of the court in this declaratory judgment proceeding have been filed by the county commissioners and by Frances J. Schweikart and Carl L. Schweikart.

The exceptions of the county commissioners, as argued by the present county solicitor, who succeeded William McElwee, Jr., now deceased, relate first to some errors appearing in the first and second findings of fact which will be corrected by restating these findings.

Next and going to the heart of the case the commis-sioners assign error in the sixth finding of fact. This finding asserts that there never was any separate assessment of the estate in the minerals. Further evidence on this point was taken which establishes that from 1871 to 1895 the estate in the minerals was assessed separately to Robert Vogele, the then owner. The last assessment was marked "no good" and thereafter there was no assessment of the minerals.

This additional fact does not alter our prior decision. The making of a separate assessment after severance of the minerals makes Hutchison v. Kline, 199 Pa. 564, and Stoetzel v. Jackson et al., 105 Pa. 562, relied upon by the county commissioners inapplicable as precedents. Apparently the taxing authorities continued to assess the minerals until they believed the minerals had no value. This would not operate to extinguish the title of the owner of the minerals or to merge his title with that of the owner of the surface. All the abandoment of the assessment did was to forfeit the taxing authority's right to collect taxes on the minerals and ultimately the right to sell them for unpaid taxes.

The exceptions of plaintiff are to the court's conclusions of law. It is unnecessary to restate here our reasons for holding that the Act of 1943 does not authorize the extinguishment of estates in coal which have not been assessed and that plaintiff has no recourse to the county because he did not get as much property by his deed as he expected.

At argument there was considerable discussion as to whether the Schweikarts under the court's decision got the right to mine the coal by stripping. Obviously this is a matter beyond the purview of the present case; it is sufficient only to observe that the owner of minerals who claims the right to disturb the surface must be able to show a waiver of the right of surface

support: Carlin v. Chappel, 101 Pa. 348; Commonwealth v. Fisher, 364 Pa. 422, 428.

The exceptions are ruled as follows:

Now, August 28, 1952, plaintiff's six exceptions are each severally overruled and refused. The first, second, third, fourth, fifth, sixth and seventh exceptions of the county commissioners are each severally overruled and refused. Upon the basis of the new evidence taken the findings of fact are corrected in the following particulars.

### Findings of Fact

1. The common owner of all the interests in the land involved in this dispute was Jacob Barge, who obtained title to 12 acres and 74 perches of land in Shenango Township, Lawrence County, Pa., by deed dated February 29, 1864, recorded October 24, 1901, in deed book, vol. 102, page 405.

2. On April 24, 1882, Jacob Barge and Anna his wife, by deed recorded in deed book, vol. 102, page 407, conveyed a part of said lands, namely, 7 acres and 74 perches, to George W. Barge, subject to this provision:

"Reserving, however, all minerals, stone, coal in or under the herein before described land, with the right to mine, take and carry away said coal and reserving the use and occupancy of about one-fourth of an acre of land, south-west corner next to Lawrence Schweikart for the purpose of mining said coal, platform, etc."

3. On May 1, 1876, Jacob Barge and Anne, his wife, by deed recorded in deed book, vol. 131, page 87, conveyed a part of the lands described in the first finding of fact, namely, five acres, to Susan Gaston, subject to this provision:

"Said party of the first part retaining the right to mine, dig and take out coal from under the above described premises with the right of way from under the above described premises, with the right of way to

and from the bank for drifts, the said coal privilege to also include the erection and maintaining of the necessary drifts, platforms, tramways, etc., by said person, by said party of the first part as well as whatever may be necessary to mine or take out said coal, free from any cost whatever to said party of the first part; the said party of the second part shall have the privilege to dig or mine or cause to be dug or mined whatever coal may be necessary for her own use only, without any consideration being rendered for the said privilege to said party of the first part."

4. By divers conveyances good in law title to the seven-acre tract referred to in the second finding of fact and the five-acre tract referred to in the third finding of fact became vested in Sarah E. Casedy, who devised the same to her husband, A. J. Casedy. The lands were sold for unpaid taxes and bought by the county commissioners as the property of A. J. Casedy, her husband.

5. By divers conveyances good in law whatever rights in the coal, of an alienable character, retained by Jacob Barge when he made the conveyances referred to in the second and third findings of fact, became vested in defendants Frances J. Schweikart and Carl L. Schweikart.

6. After the severance of the minerals, to the extent to which they were severed by the conveyances referred to in the second and third findings of fact, the surface and the minerals were separately assessed for taxes. In particular from 1871 to 1895 the minerals and mineral rights were assessed to Robert Vogele, the then owner. At the conclusion of the last assessment the tax assessor entered the notation, "no good." This was intended to operate and did operate as a decision by the taxing authorities that the property was worthless. Thereafter there was no assessment of the minerals and mineral rights.

7. The tax sale of the 12-acre tract of land was made by the county treasurer to the Commissioners of Lawrence County by tax deed dated May 1, 1940, being sale numbered 5203 of that day. The sale was confirmed by this court at September term, 1940, M. D., no. 47.

### Final Decree

Now, August 28, 1952, after full consideration of this case it is ordered, adjudged and decreed that plaintiff acquired a good title to the lands which he purchased at a sale divested of liens approved by this court on August 12, 1950, at June term, 1950, no. 23, free and divested of all mortgages, municipal claims, ground rents and estates in the nature thereof; but that he did not acquire title to the minerals theretofore severed and now owned by Frances J. and Carl L. Schweikart. It is found also that plaintiff has no recourse to the County of Lawrence. The costs of this proceeding are placed upon the County of Lawrence.