**NORTHERN DELAWARE INDUSTRIAL DEVELOPMENT CORPORATION, a nonprofit corporation of the State of Delaware, and Phoenix Steel Corporation, a corporation of the State of Delaware, Plaintiffs,**

v.

**E. W. BLISS COMPANY, a corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware.

New Castle.

July 9, 1968.

Reargument Denied July 22, 1968.

Ernest S. Wilson, Jr., of Wilson and Lynam of Wilmington for plaintiffs.

Arthur G. Connolly and Januar D. Bove, Jr., of Connolly, Bove & Lodge, Wilmington, and Simpson, Thatcher & Bartlett, New York City, for defendant.

MARVEL, Vice Chancellor:

Plaintiffs and defendant are parties to a contract dated May 26th, 1966, under the terms of which defendant agreed to furnish all labor, services, materials and equipment

necessary to expand and modernize a steel fabricating plant owned by the plaintiff Phoenix Steel Corporation at Claymont, Delaware. A massive undertaking is called for in the contract, the total price for the work to be performed by the defendant being set in the contract at $27,500,000 and the area of contract performance extending over a plant site of approximately sixty acres.

Work on the project has not progressed as rapidly as contemplated in the contract and what plaintiffs now seek is an order compelling defendant to requisition 300 more workmen for a night shift, thus requiring defendant to put on the job, as it allegedly contracted to do, the number of men required to make up a full second shift at the Phoenix plant site during the period when one of the Phoenix mills must be shut down in order that its modernization may be carried out under the contract. And while the present record is sparse, there seems to be no doubt but that defendant has fallen behind the work completion schedules set forth in such contract. What plaintiffs apparently seek is a speeding up of work at the site by means of a court-ordered requisitioning by defendant of more laborers.

The basis for plaintiffs' application for equitable relief is found in a work proposal made by defendant's prime subcontractor, Noble J. Dick, Inc., to the Bliss Company, the terms of which are made part of the contract between plaintiffs and defendant. Such proposal stipulates inter alia:

"T. *Working Schedule*

"All work is quoted on a normal 40 hour basis—5 days per week except for necessary service tie-ins. The only additional premium time included is that required during the shut-down of #1 mill when two turn-week work is contemplated."

According to plaintiffs, the phrase "two turn-week work" is a term used in the steel industry to designate the employment of day and night shifts over a full seven day work week, and defendant does not deny this. Plaintiffs therefor reason that inasmuch as at or about the time of the filing of the complaint defendant was operating one shift at the site ranging in size from 192 to 337 workers per day, whereas paragraph "T" above referred to contemplates two daily shifts, that they are entitled to a court order directing defendant to employ not less than 300 construction workers on each of two shifts, seven days per week. Plaintiffs seek other relief, including damages, but consideration of such other requested relief will be deferred for the present. Defendants earlier moved for dismissal or a stay because the parties are allegedly contractually bound to arbitrate their differences.

However, the sole matter now for decision is a question raised by the Court at argument on defendant's motion, namely whether or not this Court should exercise its jurisdiction to grant plaintiffs' application for an order for specific performance of an alleged contractual right to have more workers placed on the massive construction project here involved, and order the requisitioning of 300 workers[1] for a night shift, this being the number of laborers deemed by plaintiffs to be appropriate properly to bring about prompt completion of the job at hand.

On the basis of the record before me, viewed in the light of the applicable law, I am satisfied that this Court should not, as a result of granting plaintiffs' prayer for specific performance of an alleged term of a building contract, become committed to supervising the carrying out of a massive, complex, and unfinished construction contract, a result which would necessarily follow as a consequence of ordering defendant to requisition laborers as prayed for, 13 Am.Jur. 2nd, Building and Construction Contracts, § 112. Parenthetically, it is

---

1. Nowhere in the contract here in issue, however, does defendant undertake to supply any specific number of laborers.

noted that if such laborers are in fact available (which appears not to be the case), their presence at the Claymont site might well impede rather than advance the orderly completion of the steel mill renovation work now under way. (See Byrne affidavit).

█ It is not that a court of equity is without jurisdiction in a proper case to order the completion of an expressly designed and largely completed construction project, particularly where the undertaking to construct is tied in with a contract for the sale of land and the construction in question is largely finished, Valley Builders, Inc. v. Stein, 41 Del.Ch. 259, 193 A.2d 793, and Lee Builders v. Wells, 33 Del.Ch. 315, 92 A.2d 710, rev'd on other grounds, 34 Del.Ch. 107, 99 A.2d 620. Furthermore, this is not a case which calls for a building plan so precisely definite as to make compliance therewith subject to effective judicial supervision, Wilmont Homes, Inc. v. Weiler, 42 Del.Ch. 8, 202 A.2d 576, but rather an attempt to have the Court as the result of ordering a builder to speed up general work by hiring a night shift of employees (a proposal which was merely "contemplated" by the subcontractor, Dick) to become deeply involved in supervision of a complex construction project located on plaintiffs' property.

█ The point is that a court of equity should not order specific performance of any building contract in a situation in which it would be impractical to carry out such an order, Jones v. Parker, 163 Mass. 564, 40 N. E. 1044, and Restatement, Contracts § 371, unless there are special circumstances or the public interest is directly involved.[2] In the case of City Stores v. American (D.C. D.C.) 266 F.Supp. 766, which plaintiffs cite

to support their application, specific performance was sought of an agreement which contemplated that plaintiff would become a tenant in a designated section of a shopping center to be constructed by defendant. The plans for such center were quite definite and the court was obviously impressed by the fact that unless the relief sought were to be granted, plaintiff would lose out on a promised opportunity to share in the expected profits of a shopping center located in a burgeoning North Virginia suburb. The ruling while perhaps correct under the circumstances of the case has no application here.

█ I conclude that to grant specific performance, as prayed for by plaintiffs, would be inappropriate in view of the imprecision of the contract provision relied upon and the impracticability if not impossibility of effective enforcement by the Court of a mandatory order designed to keep a specific number of men on the job at the site of a steel mill which is undergoing extensive modernization and expansion. If plaintiffs have sustained loss as a result of actionable building delays on defendant's part at the Phoenix plant at Claymont, they may, at an appropriate time, resort to law for a fixing of their claimed damages.

On notice, an application may be made for the entry of an order of dismissal of this action insofar as it seeks an order for specific performance of the Dick proposal "T", or, in the alternative, for the removal of such cause of action to a court of competent jurisdiction.

## ON REARGUMENT

The opinion recently filed in the above case stated that for largely practical reasons

---

2. See also 4 Pomeroy Equity Jurisprudence § 1402 which notes the English exceptions to the rule that specific performance of a construction contract generally will not be ordered except where: (1) the contract is defined and certain, (2) the defendant has contracted to con-

struct a defined project on his own land, (3) the defendant has agreed to build on lands acquired from plaintiff, and (4) there has been a part performance so that defendant is enjoying the benefits in specie.

the Court would not exercise jurisdiction over plaintiffs' application for an order for specific performance of the Dick proposal attached to the contract here in issue, a clause which merely "contemplated" the employment of two daily work shifts during the period when Phoenix mill #1 would be shut down for renovation.

Such relief was denied because of the lack of precision of the language of the proposal and the basic principle that courts of equity are, in any event, prone to stand aside when asked to supervise the completion of a complex building contract on lands not owned by a defendant by entering an order for specific performance.

In their motion for reargument plaintiffs argue that what they actually seek is not an order which would make the Court the supervisor of a vast building project but rather one directing the performance of a ministerial act, namely the hiring by defendant of more workers. Plaintiffs also contend that they should have an opportunity to supplement the record for the purpose of demonstrating that construction labor is available in the area as well as establishing that perhaps fewer than 300 additional workers could adequately insure defendant's performance of the contract here in issue. These contentions, if factually sustainable, do not, of course, affect the Court's power to decline to exercise its jurisdiction to order specific performance of a construction contract.

Plaintiffs, in seeking specific performance of what they now term defendant's ministerial duty to hire a substantial number of additional laborers, run afoul of the well-established principle that performance of a contract for personal services, even of a unique nature, will not be affirmatively and directly enforced, Lumley v. Wagner, 1 De G. M. & G. 404. See also Vol. 4, Pomeroy's Equity Jurisprudence § 1343. This is so, because, as in the closely analogous case of a construction contract, the difficulties involved in compelling per-

formance are such as to make an order for specific performance impractical. Defendant's motion for reargument is denied.

On notice, an appropriate order may be presented.