522 A.2d 1053

**Gloria S. PETRY, Appellant,**

v.

**TANGLWOOD LAKES, INC., Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1986.

Decided March 11, 1987.

---

52

David C. Eaton, Harrisburg, for appellant.

Steven R. Guccini, William C. Gumble, Paupack, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

The facts in this case, based on allegations in Appellant's complaint, appear to be as follows: Appellant purchased a lot abutting a proposed, but unconstructed, lake (Lake Briarwood) by deed of November 3, 1970, for $18,000.00. The lot is in "Tanglwood Lakes" in Pike County, a large tract of land under development by Appellee, Tanglwood Lakes, Inc. (developer), since the 1960's. In 1973, Appellant constructed a cottage on the lot, overlooking the projected lake, which she has apparently used up to the present as a regular summer home and as an occasional vacation retreat in other seasons. The proposed Lake Briarwood was shown on maps and plans of "Tanglwood Lakes" which were displayed to potential purchasers of lots, including Appellant, before she purchased. Prior to purchase, Appellant was also supplied with a copy of the registration statement and property reports filed by developer with the U.S. Department of Housing and Urban Development. These documents included the following representation:

> To be completed within three to five years will be a second lake (and other recreational facilities) all at no expense to lot owners other than annual payments of dues to Tanglwood Lakes Community Association to cover maintenance.

That contemplated second lake was the platted Lake Briarwood.

In 1974, developer filed its plans and specifications with the Pennsylvania Department of Environmental Resources, which issued a permit for construction of Lake Briarwood. The permit was renewed for a number of subsequent years. However, in November of 1975, developer filed for bankruptcy under Chapter 11 of the Bankruptcy Code. During the course of these proceedings, developer entered into an agreement with the Tanglwood Lakes Community Association, an association of lot owners within the development, to escrow certain funds for the eventual construction of Lake Briarwood. The bankruptcy proceedings terminated in September, 1979. Disputes arose between developer and certain of the lot owners within the development, culminating in the filing of a suit in equity by the Community Association against developer. Settlement negotiations to the suit ensued between those parties, which resulted in an agreement which would, in effect, eliminate Lake Briarwood and substitute a recreational area in its place. Appellant did not intervene in, and was not a party to, that litigation.

On May 12, 1983, Appellant filed an action in equity against developer in the Court of Common Pleas of Pike County (Conway, J.). Appellant's complaint sought specific performance of the original "agreement" to construct Lake Briarwood along with money damages related to the failure to build the lake. The complaint also sought to enjoin the execution of the settlement agreement between developer and the Tanglwood Lakes Community Association regarding the elimination of the lake. It was later amended to request that performance of that subsequently signed settlement agreement be enjoined.[1]

1. The Community Association was not made a party defendant to Appellant's suit. We think that the Community Association should have been joined in the claim for equitable relief. Pa.R.C.P. 2227. This is not fatal, however, to our disposition of the instant appeal. Two other suits were filed by lot owners similarly situated to Appellant herein, and were disposed of in an identical fashion. Both were consolidated for oral argument with the instant appeal. Those cases are: *Babaian v. Tanglwood Lakes, Inc.,* No. 35 E.D. Appeal Docket

Developer filed preliminary objections to the original complaint, asserting laches, and asserting that Appellant had an adequate remedy at law. The trial court rejected the contention that laches was applicable, but concluded that Appellant did have an adequate remedy at law. As a consequence, the trial court transferred the complaint to the law side of the Court and subsequently amended its transfer order by striking expressly that portion of Appellant's complaint seeking injunctive relief. Noting that merely because the controversy involved an agreement concerning land, it would not necessarily follow that specific performance would lie, the trial court determined that specific performance should be granted only when no adequate remedy at law exists.

In determining whether or not an adequate remedy exists in the form of money damages, the trial court concluded that first it must be decided whether a method exists whereby the amount of damages can be computed or ascertained. While there may be certain aesthetic considerations involved here, the real question, as the trial court viewed the facts, was the actual or perceived dimunition in the value of the affected property by the failure on the part of the developer to construct Lake Briarwood. In other words, had the lake existed at the time of purchase, or had it been constructed within the time period originally contemplated, the value of the property would presumably have been enhanced. Because the lake was not constructed, and, indeed, if it is not constructed, the value of said properties presumably will be diminished to some extent. It may well be that their value may be further enhanced or diminished by the proposed plan of the developer to use the property set aside for Lake Briarwood as a recreational or park area. It was the opinion of the trial court that all of these factors were ascertainable and could be determined to a reasonable degree of certainty through the use of real estate experts

1986, and *Jesraly v. Tanglwood Lakes, Inc.,* No. 36 E.D. Appeal Docket 1986. Our disposition of the instant appeal will resolve the appeals in those cases as well. In both of the other two cases filed, the Community Association was joined as a party defendant.

and appraisers. Superior Court affirmed in a brief memorandum opinion.[2]

We granted allocatur because we were concerned about the propriety of summarily denying specific performance to a contract related to the sale or development of real estate.[3]

This case involves a collateral contract or agreement to build a "structure" (here, a lake) on land retained by a seller of real estate.[4] The contract or agreement, of course, is collateral to the sale of a lot to Appellant, and is closely analogous to an affirmative real covenant entered into between a common grantor and a purchaser of a lot in a sub-division even though the covenant is not expressly set out in Appellant's deed. Restrictive covenants on land use are not favored generally. *Mishkin v. Temple Beth El of Lancaster*, 429 Pa. 73, 239 A.2d 800 (1968). If indeed this is a restrictive covenant, we are dealing with an affirmative restriction imposed upon the grantor-seller, not the grantee-buyer, obligating the covenantor affirmatively to improve part of its retained land in a specific way.

What is clear in this situation is that Appellant has been given no *estate* in developer's retained land.[5] At most, she was given a beneficial right that is contractual in nature, possibly based on a covenant. No easement would arise here either, at least until after the lake is built. Contracts to convey an *estate* in real property have been traditionally regarded as being specifically enforceable in equity by the buyer. *Payne v. Clark*, 409 Pa. 557, 187 A.2d 769 (1963).

2. Per Judges Cirillo, Hoffman and Rosenwald—the latter sitting by designation.

3. An order certifying a case from equity to law had traditionally been regarded as interlocutory in nature and unappealable. *See, Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455 (1968). The trial court's amended order in the instant case expressly denies injunctive relief, however, and under Pa.R.A.P. 311(a)(4), an order refusing injunctions, although interlocutory, is now appealable as of right. Appeal to Superior Court was proper, therefore, and the matter is at least ripe for review by this Court at this time.

4. See Dobbs, *Remedies*, (West Publishing Co., 1973), § 12.22.

5. See generally, Restatement of the Law of Property (1936), § 9.

Sellers of real estate have also been thought to have the right to compel specific performance, at least, in theory.[6]

But in a situation where Appellant is not claiming the right to have an *estate* in land conveyed to her, an automatic right to compel the remedy of specific performance cannot be successfully maintained. Whether specific performance might be justified here, in what is essentially a breach of contract or breach of a covenant claim, is within the sound discretion of the trial court, and must turn upon the particular facts presented to that court, and upon its weighing of the equities in this specific situation. It is to those matters that we now turn.

Equitable jurisdiction to grant specific performance depends upon the "inadequacy" of the remedy at law, as was correctly pointed out by the trial court. We agree with that court that damages here can be readily computed or ascertained and hence are not impracticable of calculation. See, *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383 (1981). This case is not similar to *Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968), where a theater operator was permitted to sue a landowner and builder for specific performance of a contract for the erection and operation of a theater. In that sort of case, involving what essentially amounts to a joint business venture, future business profits are of necessity speculative and difficult to determine.[7] No such problem occurs here.

Of more difficulty is the question of whether the lake represents such a peculiar value, or is an item of such

**6.** But see, *Trachtenburg v. Sibarco Stations, Inc.,* 477 Pa. 517, 384 A.2d 1209 (1978), which restricts this presumption in Pennsylvania on the basis that a seller will usually have an adequate remedy at law.

**7.** The point is not discussed directly in *Goldman, supra,* but see, *Easton Theaters, Inc. v. Wells Fargo Land and Mortgage Co., Inc.,* 235 Pa.Superior Ct. 334, 401 A.2d 1333 (1979), where a lessee sought to compel a landlord, by specific performance, to build a theater on its (the landlord's) shopping center property. Superior Court thought that the agreement was specifically enforceable, not only because future profits would be impossible to calculate accurately, but also because the landlord had not shown that other similar properties would be available to the lessee as a substitute.

uniqueness to Appellant, that in fairness and justice money damages does not represent an adequate substitute. On the whole, weighing the various factors involved in this case, and giving appropriate deference to the determination of the trial court, we think that money damages are a just and adequate substitute. Outweighing Appellant's understandable desire to have Lake Briarwood built are other considerations.

Appellant seeks to have an affirmative covenant, or an affirmative building contract, specifically enforced. Courts have frequently denied specific performance of building and repair contracts,[8] on the theory that they are difficult to enforce because "constant supervision" would be called for.[9] While we do not wish to exaggerate the difficulties involved, the burden that would be imposed on the trial court is a matter to be considered and weighed in the balance. This Court has mandated the performance of negative agreements or covenants. In *Reed v. Reese*, 473 Pa. 321, 374 A.2d 665 (1976), we permitted a single lot owner in a development to proceed with a suit against a successor to the common-grantor to enjoin obstruction of a designated park area on the theory that because the park area had been plotted, the lot owner had a right of use or an easement.[10] Enforcing a negative covenant or agreement, of course, merely preserves the *status quo* which a lot owner may have relied on when he or she purchased and which he or she may have reasonably assumed would continue with little difficulty. An order directing a developer or owner *not* to build creates no great burden on the court issuing the order. Here, however, Appellant wishes to *alter* the *status quo*, not preserve it. When Appellant purchased her lot, it is reasonable to assume that she knew,

8. See, *e.g., Northern Delaware Industrial Development Corp. v. E.W. Bliss Co.,* 245 A.2d 431 (Del.1968).

9. See, Dobbs, *Remedies* (West Publishing Co.1973) § 12.22.

10. See also, *Haines v. Minnock Construction Co.,* 289 Pa.Superior Ct. 209, 433 A.2d 30 (1981), where a lot owner was permitted to enjoin the leveling of a wooded area and construction therein adjacent to the residential lot in question.

or should have known, that in the nature of things the lake project might never come to fruition, and that she was taking some risk, at least to the extent that there would be no automatic right or even feasibility of enforcing the agreement, and that other lot owners might not agree in any event.[11] An order directing developer here to build Lake Briarwood would, of necessity, impose a significant burden on the trial court in enforcing and supervising its own order, and Appellant had no right to rely on the proposition that such an affirmative agreement was automatically enforceable in equity.

Specific enforcement of the covenant or building contract here at issue impinges on the rights and interests of other lot owners, as represented by the Community Association, or otherwise. It is obvious from the facts presented that the Community Association and many of the other lot owners are prepared to forego Lake Briarwood for sound practical reasons. The record does not indicate whether Appellant is a member of the Association, or whether she may in any way be bound by the settlement reached by the Association. While there also is nothing in the record indicating the content of the by-laws of the Association, it is obvious nevertheless that at this point, relief by way of specific performance for Appellant will directly and adversely affect the rights of other lot owners. It is difficult to see how a purchaser in a condominium, or in a common development such as this, can reasonably argue that he or she purchased relying on, or is entitled to insist on, the absolute right to enforce specifically all executory agreements and promises originally made pertaining to the development, regardless of the wishes and rights of a majority of the other owners. We think that Appellant cannot so insist,

11. While there is no indication in the briefs or record in this case that the doctrine of merger by deed would apply to Appellant, barring relief for breach of a warranty in the contract of sale, acceptance of a deed does entail assumption of some degree of risk with respect to the condition of the property as it is known to be. See, *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), but see also, *Carsek Corp. v. Stephen Schifter, Inc.*, 431 Pa. 550, 246 A.2d 365 (1968).

regardless of whether or not she was obligated to intervene in the suit brought by the Community Association.[12]

Those factors which outweigh Appellant's interest in the uniqueness or special value of having Lake Briarwood built include: the ability to calculate or ascertain Appellant's money damages; the fact that enforcing an affirmative covenant or contract imposes a supervisory burden on the trial court; the fact that purchasing in reliance on an affirmative undertaking involves greater risk than purchasing in reliance on a negative covenant or promise; and the fact that granting Appellant specific performance would adversely affect the rights of numerous other lot owners and the Community Association at large.

This Court has repeatedly held that a decree of specific performance is a matter of grace and not of right, *Clark v. Pennsylvania State Police, supra; Mrahunec v. Fausti,* 385 Pa. 64, 121 A.2d 878 (1956); *Roth v. Hartl,* 365 Pa. 428, 75 A.2d 583 (1950); and that the exercise of the power to grant specific performance is discretionary, *Payne v. Clark,* 409 Pa. 557, 187 A.2d 769 (1963). Based on a balancing of the equities set forth above, we find that no abuse of discretion occurred here in transferring this matter to the law side of the trial court based on the pleadings and oral argument.[13]

Affirmed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. The complaint in equity filed by appellant, Gloria S. Petry, seeks specific performance of appellee's promise and agreement to construct Briarwood Lake as that lake is depicted and laid out in maps and plans of the Tanglwood Lakes Development. The averments set forth in appellant's complaint fairly and sufficiently state a cause

12. *Goldman, supra,* was a suit by a single businessman against a single landowner-builder. The rights of other lot owners were not affected as they are here.

13. See also, 5 Restatement of Property (A.L.I., 1944) § 528(f).

of action in equity for specific performance. The trial court's order transferring this case to the law side of the court was erroneous.

Specific performance is an equitable remedy to compel performance of an agreement in unique situations. *Pugh v. Holmes*, 486 Pa. 272, 295, 405 A.2d 897, 908 (1979). The facts alleged in appellant's complaint set forth a situation that indeed is unique. I disagree with the majority that appellant's damages can be readily computed or ascertained. This case is not about the value of a piece of property as it currently exists and the value of that same property if Briarwood Lake had been constructed. The questions raised here are much broader. They deal with life style values not cash values. The majority's acceptance of the theory that the failure to build the lake merely involves a diminution in the value of appellant's property fails to give due consideration to the very unique quality of the property as a lake front lot. Indeed, this unique feature is what attracts prospective owners and sells the lots.

Appellant's averments adequately show that she agreed to purchase and the appellee agreed to deliver a parcel of land having as a unique attribute a recreational lake at its doorstep. The appellant's purchase of this property was more than a real estate investment. It was an investment in a way of life and Briarwood Lake was essential to that way of life. Damages in this case do not merely involve the difference in the value of appellant's property abutting the lake as opposed to its value without the lake. Calculation of appellant's damages for her loss of a unique way of life—which is her real loss in this case—would be speculative and highly problematical. In other words, it would be extremely difficult to determine money damages that would compensate the appellant for loss of the lake, along with loss of the boating, swimming, fishing and the general life style that goes with it.

Equity has jurisdiction over the cause of action set forth by the appellant. We should not approve the chancellor's

order putting appellant out of court on her equitable complaint before hearing testimony and receiving evidence.

I would reverse the order of the Superior Court, dismiss appellee's preliminary objections and remand this case to the lower court for an order directing the appellee to answer appellant's complaint in equity.