## LOCUST LAKE VILLAGE PROPERTY OWNERS ASSOCIATION

v.

## David S. WENGERD and Emma L. Wengerd, husband and wife

## Locust Lake Village Property Owners Association

v.

## David S. Wengerd

## Appeal of: David S. and Emma L. Wengerd, husband and wife.

Commonwealth Court of Pennsylvania.

Argued April 3, 2006.
Decided May 25, 2006.

Peter B. Foster, Harrisburg, for appellants.

Gregory D. Malaska, Stroudsburg, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

David S. and Emma L. Wengerd appeal from the order of the Court of Common Pleas of Monroe County (common pleas) that granted summary judgment in favor of Locust Lake Village Property Owners Association (Association) and against the Wengerds in the consolidated matter before it.

In 2003, David Wengerd, individually, and jointly with Emma Wengerd, purchased twenty-four (24) units in the Locust Lake Village Development, a planned community in Tobyhanna Township, Monroe County, by judicial sale and/or from the repository for unsold properties.[1] Restric-

1. "Unit" is defined in Section 5103 of the Uniform Planned Community Act (UPCA), 68 Pa.C.S. § 5103, as "[a] physical portion of the planned community designated for separate

tive covenants are included in the chains of title for each of the Wengerds' properties.[2] After the Wengerds acquired these properties, the Association attempted to collect annual dues and assessments from them as unit owners,[3] contending that certain restrictive covenants and express and implied easements running with the land obligated the Wengerds for fees, assess-

ownership or occupancy, the boundaries of which are described pursuant to section 5205(5) (relating to contents of declaration; all planned communities) and a portion of which may be designated by the declaration as part of the controlled facilities." Section 5103 further defines "Planned community" as:

Real estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person. The term excludes a cooperative and a condominium, but a condominium or cooperative may be part of a planned community. For purposes of this definition, "ownership" includes holding a leasehold interest of more than 20 years, including renewal options, in real estate. The term includes nonresidential campground communities.

2. The deeds subject to the restrictive covenants and constituting the chain of title for each of the twenty-four units involved in this case are incorporated by reference into the amended complaints. The relevant restrictive covenant language includes the following:

(12) The Purchaser agrees not to sell, rent, lease or permit to be occupied, the premises hereby conveyed, excepting to persons first approved for membership in the association club, or in the event the association has not yet been formed excepting to persons first approved by the LOCUST LAKE VILLAGE, INC., or its successors, nor shall signs for any purposes be erected or maintained on the premises.

(13) Until dedicated to public use, title to the portion of the lands of the Seller laid down on the maps as streets shall remain in the Seller subject to the right of the Purchaser and others and those claiming under them to use the same for ingress and egress to and from the public roads, and subject to the right of the Seller to maintain or grant the right to maintain water mains, sewer pipes, street drains, gas mains, fixtures for street lighting, telephones and electric poles, within the lines of such roadways.

(14) The restrictions as herein provided shall apply only to the premises hereby conveyed and may be changed by the Seller when desired by it or its successors, said restrictions being imposed for the benefit of the remaining lands of the Seller and lands which may be hereafter acquired.

(15) The Purchaser is hereby granted the privilege of boating, bathing, fishing and ice skating on all the lakes owned by the Seller. None of the foregoing activities are to be engaged in for any commercial purpose whatsoever.

. . . .

(19) This Schedule A shall bind the Seller, its successors and assigns, and shall bind the Purchaser, and the heirs, executors, administrators, successors and assigns of Purchaser.

Exhibit B to Amended Complaint (No. 872 CIVIL 2005); Exhibit B to Amended Complaint (No. 873 CIVIL 2005). With respect to this last provision, we note that, "[s]ince the test for determining whether the promise runs with the land is whether it was so intended by its creators, an indication that the grantees' heirs or assigns are considered bound by its terms is generally decisive of the question." *Hartzfeld v. Green Glen Corp.*, 380 Pa.Super. 513, 552 A.2d 306, 309 (1989) (citation omitted). We further note that these restrictions were apparently recorded on February 18, 1975, by the recorder of deeds for Fairfield County, Connecticut.

3. "Unit owner" is defined in Section 5103 of the UPCA as

[a] declarant or other person who owns a unit or a lessee of a unit in a leasehold planned community whose lease expires simultaneously with a lease the expiration or termination of which will remove the unit from the planned community. The term does not include a person having an interest in a unit solely as security for an obligation.

ments, charges, and dues imposed by the Association for its maintenance and operation of the common elements of the development. These fees represented the units' proportionate share of the maintenance costs, and the Association sought only charges that came due after the Wengerds acquired title to the units. The Wengerds, however, failed to pay these charges, believing that purchase of the properties pursuant to Section 612(a) of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.612(a), relating to judicial sales, and Section 627(b) of the Law, 72 P.S. § 5860.627(b),[4] relating to repository tax sales, extinguished any restrictive covenants and express and implied easements with respect to the properties, and, therefore, relieved them of any obligation to pay the monies sought.

On February 3, 2005, the Association filed a civil action against David and Emma Wengerd, docketed at No. 872 CIVIL 2005, and a civil action against David Wengerd, docketed at No. 873 CIVIL 2005, for these claimed fees, dues and assessments. By stipulation of the parties, the Association filed amended complaints on June 1, 2005. On June 29, 2005, the Association filed a motion for summary judgment in both cases, contending, *inter alia,* that the UPCA affords it the power to collect assessments for common expenses from unit owners and that "[a]s owners of easement rights, [the Wengerds are] obligated to pay the costs of maintenance." Plaintiff's Motion for Summary Judgment (No. 872 CIVIL 2005), paras. 29 and 35; Plaintiff's Motion for Summary Judgment (No. 873 CIVIL 2005), paras. 28 and 34.[5] Further, the Association alleged that "[t]here is no authority for the proposition that a judicial or tax sale will affirmatively remove or negate covenants running with the land, including those requiring payment of association assessments" and "[t]he affirmative restrictive covenants were not wiped ou[t][n]or divested by the [Wengerds'] acquisition [of said parcels] from judicial or repository sale." Plaintiff's Motion for Summary Judgment (No. 872 CIVIL 2005), paras. 39 and 41; Plaintiff's Motion for Summary Judgment (No. 873 CIVIL 2005), paras. 38 and 40. On August 23, 2005, common pleas issued an order granting the Association's motions for summary judgment. In doing so, common pleas awarded $13,774.81 plus costs and attorneys' fees in favor of the Association and against the Wengerds (872 CIVIL 2005) and $16,092.12 plus costs and attorneys' fees in favor of the Association and

---

4. Section 627 of the Real Estate Tax Sale Law was added by the Act of July 3, 1986, P.L. 351.

5. *See* Section 5302(a) of the UPCA, 68 Pa. C.S. § 5302(a), providing that the Association may, *inter alia,* "[a]dopt and amend bylaws and rules and regulations"; "[a]dopt and amend budgets for revenues, expenditures and reserves and collect assessments for common expenses from unit owners"; and "[r]egulate the use, maintenance, repair, replacement and modification of common elements[.]" Section 5103 of the UPCA defines "common expenses" as "[e]xpenditures made by or financial liabilities of the association, together with any allocations to reserves.

The term includes general common expenses and limited common expenses." "General common expenses" are defined in the UPCA as "[a]ll common expenses other than limited common expenses" and "limited common expenses" are defined as "[a]ll expenses identified as such under section 5314(c) (relating to assessments for common expenses)." Section 5314(c) provides in part:

(c) **Special allocations of expenses.**—Except as provided by the declaration:
(1) Any common expense associated with the maintenance, repair or replacement of a limited common element shall be assessed in equal shares against the units to which that limited common element was assigned at the time the expense was incurred.

against David Wengerd (873 CIVIL 2005). The Wengerds then appealed to Superior Court, which transferred the case to this court.[6]

■ First, the Wengerds argue that Sections 612(a) and 627(b) of the Real Estate Tax Sale Law act to extinguish "any restrictive covenants and express and implied easements" relevant to their properties at the time of their purchase by judicial sale or from repository, and, therefore, they are not liable for the charges that the Association is claiming. In this regard, they contend that easements and restrictive covenants are interests in real property that come within the meaning of "estates" as delineated in the statutory language detailing that the properties shall be sold or conveyed "free and clear of all ... *estates of whatsoever kind* ...." 72 P.S. §§ 5860.612(a), 5860.627(b) (emphasis added).

Although the Real Estate Tax Sale Law does not contain a definition of "estate," Black's Law Dictionary describes it, *inter alia*, as "[t]he amount, degree, nature, and quality of a person's interest in land or other property." *Black's Law Dictionary* 567 (7th ed.1999). Particularly illuminating for our purposes, the First Restatement of Property provides in pertinent part as follows:

§ 9. ESTATE

The word "estate," as it is used in this Restatement, means an interest in land which

(a) **is or may become possessory; and**
(b) **is ownership measured in terms of duration.**

*Comment:*

*a. Requirement—An interest in land.* The word "estate" is used in this Restatement only to designate an interest in land. Interests which are quite analogous to estates for life and estates in fee simple do exist in things other than land but such interests are not herein designated as estates.

*b. Requirement—Is or may become possessory.* All present possessory interests in land, with the possible exception of the tenancy at sufferance (§ 22) have always been designated by both courts and text writers as estates. *The word "possessory" as here used has a considerable exclusionary effect. Such interests as easements, profits, restrictive covenants and agreements affecting the use of land, powers of appointment and rents are not possessory interests and are not interests which may become possessory ....*

Restatement (First) of Property § 9 (1936) (emphasis in original and added).[7]

■ Simply put, this definition of "estate" and the explanatory comments thereto do not support the Wengerds' contention. Covenants running with the land and easements are not "estates" within the meaning of the Real Estate Tax Sale Law because those interests are non-possessory.[8] Furthermore, "it is not for courts to add to a statute, by interpretation, a re-

---

6. Summary judgment is proper only when an examination of the record in the light most favorable to the non-moving party reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Dubin v. County of Northumberland*, 847 A.2d 769, 771–72 n.7 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 581 Pa. 682, 863 A.2d 1149 (2004). Accordingly, our scope of review is limited to a determination of whether common pleas committed an error of law, a question over which we exercise plenary review.

7. We note that our Supreme Court specifically referred to this section of the First Restatement of Property when determining in *Petry v. Tanglwood Lakes, Inc.*, 514 Pa. 51, 522 A.2d 1053 (1987), that appellant therein had not been given an estate in the developer's retained land. *Id.* at 56–57 n.5, 522 A.2d at 1055, n.5.

8. We note that, in this regard, our Supreme Court stated in *Clements v. Sannuti*, 356 Pa. 63, 65, 51 A.2d 697, 698 (1947): "An easement is a liberty, privilege or advantage

quirement which the legislature did not see fit to include[.]" *O'Donoghue v. Laurel Savings Assoc.*, 556 Pa. 349, 357, 728 A.2d 914, 917 (1999) (citation omitted). If the General Assembly had wanted covenants and easements to be extinguished at the time of judicial and repository tax sales, it could have specifically so stated.

As well, our Supreme Court, in *Tide Water Pipe Company v. Bell*, 280 Pa. 104, 124 A. 351 (1924), in contemplating whether a right-of-way was discharged by a treasurer's sale in light of an earlier tax sale statute,[9] stated in relevant part as follows: "We find nothing ... to cause us to differentiate a tax sale from other judicial sales.... *We therefore hold that if land is sold for taxes, an easement, servitude, or interest in the nature of an easement, is not destroyed, but the purchaser takes subject thereto.*" *Id.* at 117, 124 A. at 355. Although the statute at issue in *Tide Water Pipe Co.* did not implicate the precise question of statutory interpretation now before us, we nevertheless find its holding instructive. *See also Gilfillan v. Haven*, 161 Pa.Super. 114, 53 A.2d 901 (1947) (relying on *Tide Water Pipe Co.*); *Richmond v. Bennett*, 205 Pa. 470, 55 A. 17 (1903).[10]

---

**9.** Specifically, Section 5 of the Act of April 3, 1804, P.L. 517, 522, which provided:

> which one may have in the lands of another ... [which] cannot be an estate or interest in the land itself, or a right to any part of it[.]" (Citation omitted). *But cf. Penman v. Jones*, 256 Pa. 416, 427, 100 A. 1043, 1046 (1917), where our Supreme Court earlier stated in dicta: "An easement is always an estate in the land."

**9.** Specifically, Section 5 of the Act of April 3, 1804, P.L. 517, 522, which provided:

> That sales of unseated lands for taxes ... shall be in law and equity valid and effectual, to all intents and purposes, to vest in the purchaser or purchasers of lands sold as aforesaid, all the estate and interest therein, that the real owner or owners thereof had at the time of such sale, although the land may not have been taxed or sold in the name of the real owner thereof.

*Id.* at 115, 124 A. at 355.

**10.** Moreover, the cases that the Wengerds cite in support of their position that the tax sales somehow divested any and all prior restrictive covenants and express and implied easements that may otherwise have been applicable to their Locust Lake Village properties are wholly unavailing. *Kline v. Lawrence County Commissioners*, 84 Pa. D. & C. 1 (1953), concerned a claim for a separate estate in land (coal) that was severed from the surface approximately seventy years before. There is no question that in Pennsylvania coal is traditionally considered to be an estate in land. *See* George W. Thompson, *Commentaries on the Modern Law of Real Property* Vol. II 16 (1980 replacement by John S. Grimes). *In re Public Sale of Property*, 17 Pa. D. & C. 4th 252 (1992), concerned the question of whether leaseholds are properly considered "estates" within the meaning of Section 612 of the Real Estate Tax Sale Law, but because leaseholds were omitted from the list of specific interests to be divested at judicial sale and the General Assembly did not define "estates" to include leaseholds, common pleas concluded they did not come within the meaning of "estates" as set forth in the statute. Further, *Wood v. Township of Buena Vista*, 76 N.J.L. 159, 69 A. 205 (1908), in which the New Jersey Superior Court determined that land sold at a tax sale to the township was taken pursuant to the relevant statutory provision "in fee-simple, absolute, free, and discharged from any estate in or lien upon the same[,]" *id.* at 206, does not define "estate" at all, let alone in the context of the statutory provisions at hand. Last, *Young v. Thendara*, 328 Mich. 42, 43 N.W.2d 58 (1950), *superseded by statute on other grounds, Mackinac Island Dev. Co., Ltd. v. Burton Abstract and Title Co.*, 132 Mich. App. 504, 349 N.W.2d 191 (1984), wherein the Supreme Court of Michigan held that the defendants acquired title from the state at a scavenger sale free from the plaintiffs' claimed easements, specifically noted that the defendants had "never covenanted or agreed with the lot owners that they might have an easement in or the use of the defendants' property. Defendants did not owe any obligation to plaintiffs in that regard." *Young* at 63. Here, restrictive covenants were included in the Wengerds' chain of title, and these covenants include easements that benefit their properties.

Next, the Wengerds argue that common pleas erred in finding that they gained easement rights over the subdivisions' common elements and facilities when they acquired their units, because their tax claim deeds do not refer to a subdivision plan or a development plan. However, the Wengerds acknowledge that "[i]n the chain of title for [their] deeds are restrictive covenants[,]" Wengerds' brief at 8, and the law is clear that " 'a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.' " *Piper v. Mowris,* 466 Pa. 89, 97, 351 A.2d 635, 639 (1976) [quoting *Finley v. Glenn,* 303 Pa. 131, 136, 154 A. 299, 301 (1931)]. The Wengerds' failure to perform the requisite due diligence is to their own detriment, where the tax claim bureau deeds contain lot and section numbers as well as other information presumably associating the properties with Locust Lake Village.

Given the above analysis, we reject the Wengerds' argument that they are not liable for the Association's claimed charges because the Real Estate Tax Sale Law effectively trumped the UPCA. Instead, controlling here, this court explained in *Spinnler Point Colony Association v. Nash,* 689 A.2d 1026 (Pa.Cmwlth.1997) that property owners in a private residential development who had the right to travel the development's roads and to access lake waters were obligated to pay a proportionate share for repair and maintenance of the development's roads, facilities and amenities. *Id.* at 1029. In reaching this conclusion, despite the fact that the property owners' chain of title did not refer to a property owners' association, we quoted our sister court in *Meadow Run and Mountain Lake Park Association v. Berkel,* 409 Pa.Super. 637, 598 A.2d 1024, 1026 (1991), that

> residential communities ... are "analogous to mini-governments" and as such

are dependent on the collection of assessments to maintain and provide essential and recreational facilities. When ownership of property within a residential community allows the owners to utilize the roads and other common areas of the development, there is an implied agreement to accept the proportionate costs for maintaining and repairing these facilities.

*Spinnler Point,* 689 A.2d at 1028–29.

We then stated:

> Appellants are the beneficial users of the common areas of the development, and as such, they are responsible for the cost of repair, maintenance and upkeep of the common areas. If we were to find to the contrary, lot owners would be able to avoid their duty to pay assessments, and because associations would be powerless to operate, the facilities of a development would fall into disrepair. *Thus, we hold that a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities.*

*Id.* at 1029. (Emphasis added). *See also Treasure Lake Property Owners Assoc. v. Meyer,* 832 A.2d 477, 482 (Pa.Super.2003) (determining that maintenance fees may be assessed personally on property owners in a subdivision because they are beneficial users of the development's common areas.)

In the matter sub judice, included in the restrictive covenants is the following provision:

> (12) The Purchaser agrees not to sell, rent, lease or permit to be occupied, the premises hereby conveyed, excepting to persons first approved for membership in the *association club,* or in the event

the *association* has not yet been formed excepting to persons first approved by the LOCUST LAKE VILLAGE, INC., or its successors, nor shall signs for any purposes be erected or maintained on the premises.

(Emphasis added). The chains of title in this case, then, refer to a property owners' association and, therefore, the Wengerds' obligation to pay the claimed charges is even more compelling than the property owners' obligation to do so in *Spinnler Point.*

As previously stated, Section 5302(a) of the UPCA, 68 Pa.C.S. § 5302(a), specifically provides that the Association may, *inter alia,* adopt By-laws, rules, regulations, and budgets for revenues and expenditures, as well as collect assessments for common expenses. The Association may also regulate the use, maintenance and repair of the development's common elements. The By-laws passed in this case include among the Association's purposes the power to "levy and assess dues and special fees for the use of recreational and related facilities or other projects of the Association where deemed necessary and proper...." Article II, Section 1(F). They also provide that "[a]ll members shall be subject to such dues, fees and assessments as may be determined by the Board of Directors pursuant to these By–Laws[.]" Article III, Section 1(B). Further, "[a]ll new members shall pay pro-rata based on a per diem calculation from date of acquisition." Article III, Section 2(C)(1). The Wengerds have not raised any genuine issue of material fact as to why they are not obligated to pay the Association's claimed charges in light of the Association's obvious authority to impose these fees and assessments pursuant to the UPCA and its By-laws promulgated thereunder. Accordingly, we perceive no error of law by common pleas in granting the Association's motions for summary judgment in this case, and its order is hereby affirmed.

### ORDER

AND NOW, this 25th day of May, 2006, the order of the Court of Common Pleas of Monroe County in the above captioned matter is hereby AFFIRMED.