RIVER PARK HOUSE OWNERS
ASSOCIATION, Appellant

v.

William CRUMLEY.

River Park House Owners Association

v.

William Crumley, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 14, 2012.

Decided June 4, 2012.

Reargument Denied July 17, 2012.

Colins, Senior Judge, filed dissenting opinion.

 

Richard B. Klein, Philadelphia, for designated appellant River Park House Owner's Association.

Andrew M. Ominsky, Philadelphia, for designated appellee William Crumley.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

William Crumley (Crumley) and the River Park House Owners Association (Association) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) granting judgment in favor of Crumley in the Association's suit to recover unpaid condominium assessments, late fees, and attorneys' fees pursuant to a bulk services contract for cable television (Contract) entered into by the Association's executive board and permitting ratification of the Contract by a majority of unit owners. At issue in this case is whether cable television can be a common fee within the meaning of the Pennsylvania Uniform Condominium Act (Act), 68 Pa.C.S. §§ 3101–3414, and the Association's by-laws.

River Park House is a 354–unit, planned residential condominium development in Philadelphia. The units at River Park are governed by the terms of the Declaration of the Association (Declaration) and the Association's by-laws, as well as the Act. The Declaration is a covenant running with the title to the land, so acceptance of a deed to a condominium unit of the Association makes the owner subject to the provisions of the Declaration. Under the by-laws, the Association is governed by an executive board (Council). Section 3302(a) of the Act provides that a condominium owners association has the power to "collect assessments for common expenses from unit owners; … [m]ake contracts and incur liabilities; … [and] [e]xercise any other powers necessary and proper for the governance and operation of the association," 68 Pa.C.S. § 3302(a)(2), (5), (16), and Section 3303 permits the Council to act on behalf of the Association. In making those contracts, as well as other matters, the Council members are required to execute their duties "in good faith in a manner they reasonably believe to be in the best interests of the association." 68 Pa.C.S. § 3303(a).

To replace an expiring cable television contract which did not require all residents to purchase cable, on December 4, 2007, the Council entered into the Contract with Comcast of Southeast Pennsylvania, LLC (Comcast) for cable television. The Contract required all residents to purchase cable in order for the entire building to obtain a substantial discount in cable fees. Under the Contract, the Association would be obligated to pay Comcast $43.95 per month per unit, effective January 1, 2008.[1] The cable charge was added to unit own-

---

1. The cost for cable television services under the Contract was increased to $49.23 per month beginning May 1, 2009. (Reproduced Record [R.R.] at 133a.)

ers' monthly fees. Crumley has been the owner of, and has lived at condominium Unit 912 since 1987. Because he opposed the new contract, he has refused to pay the cable television service fees under the Contract since it took effect, but has continued to pay the balance of the monthly common expense maintenance fees.

The Association sued Crumley in Philadelphia Municipal Court for unpaid assessments, late charges, and legal fees and a judgment was entered against him and he was ordered to pay $1,968.58 plus $86.50 costs. Crumley appealed, and the matter went to a board of arbitrators which reversed the Municipal Court. The Association appealed to the trial court, contending that the Contract was proper because under the Act, the Association had the power to enter into contracts; and it entered into the Contract in good faith, and the court should not disturb what it considered a common expense.

Before the trial court, Lynn Lonker (Lonker), a unit owner and resident at River Park House testified that she had owned a unit for 22 years and had been involved with obtaining cable television service for the building because she had been employed prior to her retirement by Prism Television as a director of programming. She testified that River Park House first obtained cable television services approximately 20 years ago, and it was for a shared rate for the building, which meant that the discount offered to subscribers in the building depended on how many units subscribed to the cable services. When that agreement was going to expire, Lonker testified that she helped negotiate the Contract.

Cindy Dorfman (Dorfman) testified that she was president of the Council when the existing cable service contract with Time Warner was set to expire in 2007. At that time, she contacted Lonker for assistance in finding other cable provider options because rates nearly doubled when the Time Warner contract expired. At a closed Council meeting on October 25, 2007, a Comcast representative said Comcast would not offer a shared rate, but would offer a bulk rate contract, which meant the Association would pay a flat rate for the entire building. Because of the cost savings, at a November 19, 2007 meeting, the Council decided to enter into the Contract. Another meeting was held on January 3, 2008, which was open to all unit owners. Dorfman said that over 100 people attended the meeting to voice their concerns on the Contract. Dorfman also reviewed a petition signed by approximately 126 residents contesting the Contract. She further testified that in January 2008, close to 75 percent of units were using cable television.

Regarding monthly assessments, Dorfman testified that the monthly assessments paid by unit owners went to trash removal, water, doorman services, 24–hour security, landscaping, and an open parking lot,[2] among other things. Dorfman testified that although she did not own a car and, therefore, did not use the parking lot, she did not get a rebate or discount on her monthly assessment. Similarly, unit owners who left for the winter did not get assessment discounts.

Dave Brooks (Brooks), a multi-dwelling unit account executive for Comcast, testified that the Contract was Comcast's standard template bulk-service agreement and many condominium associations had a similar contract. He stated that by signing a

---

**2.** River Park House has two facilities for parking. Residents may park at no charge in an open parking lot on a first come, first served basis, or may pay a monthly fee to park in an assigned spot in a parking garage. (R.R. at 101a.)

contract for a bulk rate, residents would save approximately $30 off the retail rate. Brooks admitted that when residents wanted expanded cable service or internet and phone service, Comcast billed those users separately for those services.

Raymond Haygh (Haygh), the general manager of River Park House, testified that it was his job to "investigate potential services or utilities and recommend different things to the [Council] about what they should do about entering into contracts." (R.R. at 119a.) Haygh said that the monthly assessment covered taxes, building employees, and utility bills, including gas and electric. As to the utility bills, the Association generally attempted to enter into contracts to secure a lower price for unit owners. He said that of all unit owners, Crumley was the only individual not paying the portion of the monthly assessment attributed to cable, and as of January 11, 2011, Crumley owed $2,910.47, including the cable cost and late fees. If the Association pro-rated the cable fees based on how many individual unit owners were using the services, it would become difficult because the number of owners using cable could vary from month to month.

On cross-examination, Haygh agreed that the other bills that were covered by assessment fees—such as electric, air conditioning, and gas—covered necessities, while cable television was more of a luxury. Haygh said the other utility fees were apportioned based on the size of each condominium, because individual meters for each unit would be cost prohibitive, even though other condominium and apartment buildings metered services individually. Haygh also said that Crumley paid $50 per

month[3] for a parking spot in the building's garage, and if he did not use the garage, he would not have to pay that fee. Parking, he said, was a luxury, like cable television, but something like landscaping was a necessity.

Crumley testified that he refused to pay monthly assessment for cable, which he considered a luxury, because he did not have a choice of whether or not to purchase it. He also said that he did not believe the Contract had made his property more valuable or benefitted him at all. Crumley also testified that he never voted on the increase in late fees for delinquent assessments, but he did receive a copy of the resolution.

The trial court found that the Association and Council acted in good faith when it entered into the contract, but the Council exceeded its authority in entering into the Contract and that cable television was not the type of service permitted to be charged as a common expense. However, the trial court went on to state that if the Contract should be presented to unit owners of the Association and voted upon, and if the Contract was ratified by a majority of owners, Crumley would be bound by the Contract moving forward, but not retroactively. The Association filed post-trial motions, and the trial court issued a subsequent opinion which said that if the Contract was passed by a majority of unit owners, Crumley could be held liable for all cable fees—past, present, and future. Both parties appealed.[4]

On appeal, the Association argues that the Council had the power to enter into Contract for cable service under Section

3. During his testimony, Crumley said the fee was now $60 per month. (R.R. at 130a.)

4. Our scope of review on appeal is limited to determining whether the trial court committed an error of law, "a question over which

we exercise plenary review." *Locust Lake Village Property Owners Association v. Wengerd*, 899 A.2d 1193, 1197 n. 6 (Pa.Cmwlth. 2006).

3303(a) of the Act because it determined that it was in the best interests of the residents. However, the issue is not whether the Council entered into the Contract with the best interests of the residents in mind, but whether it had the authority under the Act and/or by-laws to determine that a contract that did not benefit all residents and was a "luxury" fell within the type of contract that could be added to the common expenses. The Act defines "common expenses" as "[e]xpenditures made or liabilities incurred by or on behalf of the association, together with any allocations to reserves, including general common expenses and limited common expenses. 68 Pa.C.S. § 3103. The Association's by-laws provide that the budget will include "Common Expenses ... (including, by way of illustration and not limitation, ... services, maintenance, repairs, replacements, landscaping ... and all other Common Expenses) as deemed necessary by the Council." (Trial Court Opinion dated April 27, 2011, at 6.)

■ We agree with the Association that nothing in the Act's definition of common expenses would preclude the Association from entering into a bulk contract for cable television. However, the definition contained in the by-laws is narrower. As found by the trial court, common expenses under the by-laws relate to matters regarding the "operational, health, maintenance and safety decisions affecting all units of the building." *Id.*, at 7. Other services illustrated as type of services permitted—landscaping, heat, and electricity—are necessities that are needed for the operation of the building, and parking is required as part of the zoning requirements for the building. Because the decision of whether to subscribe to cable television does not affect other unit owners in their use and enjoyment of their units or common areas, we agree with the trial court that cable television is not a common expense that the Association can levy under its by-laws.

■ As to his appeal regarding whether the by-laws can be amended, Crumley argues that the by-laws cannot be amended to provide for fees for cable as a common expense under Section 3314 of the Act, which provides that "[a]ny common expense benefiting fewer than all of the units shall be assessed exclusively against the units benefited." 68 Pa.C.S. § 3314(c)(2). However, the Contract would not run afoul of that provision because the cost savings would inure to all the Association residents. In any event, as the trial court stated in its original opinion, Crumley cannot be retroactively bound to pay for services prior to amendment of the by-laws because the services were not properly charged as common expenses.

Accordingly, we affirm the trial court's decision that the Council acted in good faith, but, nonetheless, outside its scope of authority in entering into the Contract; that the by-laws may be amended to allow bulk cable television services; but reverse the trial court's determination that Crumley may be held retroactively liable for cable fees if the By–Laws are amended.

Judge SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, this 4th day of June, 2012, the order of the trial court, dated April 27, 2011, is affirmed in part and reversed in part in accordance with this decision.

DISSENTING OPINION BY Senior Judge COLINS.

I dissent. I believe that the decision concerning the purchase of bulk cable service for all of the units in the building

clearly is an "operational" decision which affects all of the units in the building. Therefore, it would qualify as a common expense that may be levied by the Association.

In today's real estate world, cable television and internet services are as much of a condominium necessity as general landscaping services and, therefore, the Council acted properly in levying the cable television minimum fees.

Therefore, by implication, I would also reverse the trial court's decision regarding the retroactive liability for cable fees.